Robert V. Santangelo, J.
A lease was entered into between the landlord and the tenant for apartment No. 3 at No. 328 East 25th Street, New York, New York, at a monthly rental of $225 per month, payable on the first of each month, beginning October 1, 1963 and ending September 30, 1966, with the provision: “All of the above is subject to the deliverance to the Landlord of a certificate of occupancy by the Department of Buildings.” The landlord has instituted summary proceedings for the nonpayment of rent for December, 1965, January and February, 1966. The tenant counterclaims for the return of rents paid from the inception of the lease because of the nonexistence of a certificate of occupancy.
On July 11,1961, prior to the execution of the lease, the landlord filed an alteration application with the Department of Buildings proposing to convert the second floor to offices and one five-room apartment, and the third floor to one five-room apartment. . The building had previously contained a store on the first floor, loft and offices on the second floor and a loft on the third floor. On August 29,1961 the application was approved and on June 4, 1962 a permit was issued. The conversion was complete by August 5, 1963, when an application was filed by the landlord for a new certificate of occupancy.
On August 13, 1963 the Department of Buildings filed objections which were corrected and amended plans were filed by the landlord. On September 17, 1963 the department informed the landlord that its approval and permit, granted in August of 1961 and June, 1962, were granted in error and that the approval and permit were revoked. Reeonsideraton of the disapproval was denied on October 2,1964.
On November 15, 1965 the tenant herein complained to the department that the ceiling of the hallway was too low and that *490 he and his wife hit their heads on it. He also complained that no certificate of occupancy had been obtained. The tenant has withheld the rent for December, January and February. The landlord seeks to recover.
“A multiple dwelling ’ is a dwelling which is either rented, leased, let or hired out, to be occupied, or is occupied as the residence or home of three or more families living independently of each other,” (Multiple Dwelling Law, § 4, subd. 7). The building involved herein is not a mulitple dwelling since only two apartments are rented for residency. Accordingly, this action is not barred by paragraph b of subdivision 1 of section 302 of the Multiple Dwelling Law, which provides: “No rent shall be recovered by the owner of such premises [without a certificate of occupancy] for said period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of such rent.”
The court must, therefore, look to the agreement entered into between the parties and to its own powers to determine whether this action for rent is barred because of the failure of the landlord to obtain a certificate of occupancy.
From the clear language of the lease and the evidence submitted, the court is convinced that the clause inserted in the lease concerning a certificate of occupancy is not a condition precedent. It was not the intention of the parties that the lease was not to take effect until a certificate was granted. The tenant desired this apartment for living accommodations; he was fully aware that the structure had been renovated and was fully aware that no certificate had yet been issued.
The clause reads: ‘ ‘ All of the above is subject to the deliverance to the Landlord of a certificate of occupancy by the Department of Buildings.” Its clear language indicates that it is a condition subsequent. If the certificate was not delivered to the landlord within a reasonable time the relationship of landlord and tenant, created by the lease, would come to an end. Since no time was specified for the performance of the condition, a reasonable time must be given.
The landlord’s last attempt to obtain the certificate prior to the institution of this action was October, 1964, when he requested reconsideration of the department’s action revoking the application and permit for conversion. Subsequent to the institution of this action the landlord has applied for a variance from the Board of Standards and Appeals.
Although the court would be hard pressed to call the-landlord’s efforts to obtain a certificate reasonable and diligent, it is not necessary to consider his efforts in the light of the *491 long delay between the execution of the lease and the tenant’s first objection regarding the failure to obtain a certificate. Until November 15, 1965, more than two years after the execution of the lease, the tenant made no inquiries, objections or complaints. Moreover, his possession of the premises remained substantially undisturbed. The condition subsequent was waived by the tenant and he is liable for the rent in issue herein pursuant to the lease. (See concurring opn. of Fund, J., in 57-70 58th St. Holding Corp. v. Fedders-Quigan Corp., 5 N Y 2d 557, 566.)
Tenant denies his waiver by citing paragraph 16 of the lease agreement, which states: ‘ ‘ This lease shall not be modified by any implied agreement or custom, nor by any act or omission of the Landlord and no change, modification, alteration or waiver of any clause, provision or condition of this lease, and no surrender of this lease shall be valid, binding or effective, unless made in writing signed by a duly authorized officer of the Landlord. The Landlord has made no representations or promises in respect to said building or the demised premises, except those contained herein, and those, if any, contained in a written communication to the tenant duly signed by the Landlord.” The above clause is clearly intended for the benefit of the landlord. Under the clause no waiver is effective unless in writing and signed by the landlord. Clearly it does not envision that, should the tenant decide to waive a provision in the lease, it would only be effective if the landlord signed it.
The tenant cites section C26-183.0 of the Administrative Code of the City of New York, which provides: “It shall be unlawful to occupy or use in whole or in part, for any purpose whatever, any structure altered after January first, nineteen hundred thirty-eight, which was vacant during the progress of the work of alteration until a certificate of occupancy shall have been issued by the superintendent, certifying that the work for which the permit was issued has been completed substantially in accordance with the approved plans and specifications and the provisions of the laws governing building construction applying to such an alteration. ’ ’ Despite the above provision of the code, there is no provision similar to section 302 (subd. 1, par. b) of the Multiple Dwelling Law barring an action for rent. A lease may not be avoided by a tenant in possession solely because the landlord has failed to obtain a certificate of occupancy. Something more must be shown. It must be shown that the landlord has violated some provision of law which directly and substantially concerns the public health, safety and welfare, or that the use of the premises is thereby precluded or restricted. *492 (Elkar Realty Corp. v. Kamada, 6 A D 2d 155; Minton v. Schulte, Inc., 153 Misc. 195; Mesfree Realty Corp. v. Huyler’s, 153 Misc. 667.) The only violation complained of by the tenant is a low hallway ceiling. He saw the apartment and the hallway before entering into the lease and he used the apartment and paid rent for two years without complaint. By his own actions the tenant attests to the fact that the condition is not dangerous to his health, safety and welfare. Moreover, the complained of condition does not affect his apartment but the hallway.
The Legislature has enumerated some conditions which it considers dangerous to health, safety and welfare in section 770 of article 7-A of the Real Property Actions and Proceedings Law. None of these are present.
The tenant would have this court bar an action for rent in this case on the authority of Clark v. Bergold Realty Corp. (N. Y. L. J., June 10, 1952, p. 2308, col. 1.) In that case Justice McGtvern said that “ since a certificate of occupancy was necessary, as concededly it was, the landlord could not have recovered the rent in a frontal action for the same (cf. sec. 302, Multiple Dwelling Law [citing cases]).”
This court cannot read into section C26-183.0 of the Administrative Code the strict provision of section 302 of the Multiple Dwelling Law on the basis of the Clark case, since the facts in that case do not disclose the conditions which prevented the landlord from obtaining a certificate and since the relevant language of that case is merely obiter dictum. Section 302 is, as was said in Wokal v. Sequin (167 Misc. 463, 465): “ an onerous one and a most drastic one * * *. The statute, being a highly penal statute must be strictly construed, and therefore, may not be extended so as to grant to the tenant any right not expressly provided for.”
Accordingly, final judgment is awarded to the landlord in the amount of $675 and the tenant’s counterclaim for rents previously paid is dismissed.