Lillie BROWN, Appellant,

v.

SOUTHALL REALTY COMPANY, Appellee.

No. 4199.

District of Columbia Court of Appeals.

Argued Dec. 11, 1967.

Decided Feb. 7, 1968.

Rehearing Granted March 27, 1968.

---

8. There was also evidence that appellant had taken some sort of pill.

Florence Wagman Roisman, Washington, D. C., for appellant. Thomas E. Willging and Michael Frank, were on the brief, for appellant.

No appearance for appellee.

Before HOOD, Chief Judge, MYERS, Associate Judge, and QUINN (Associate Judge, Retired).

QUINN, Judge.

This appeal arises out of an action for possession brought by appellee-landlord, against appellant-tenant, Mrs. Brown, for nonpayment of rent. The parties stipulated, at the time of trial, that the rent was in the arrears in the amount of $230.00. Mrs. Brown contended, however, that no rent was due under the lease because it was an illegal contract. The court held to the contrary and awarded appellee possession for nonpayment of rent.

Although counsel for appellant stated at oral argument before this court that Mrs. Brown had moved from the premises and did not wish to be returned to possession, she asserts that this court should hear this appeal because the judgment of the court below would render certain facts res judicata in any subsequent suit for rent.[1] In Bess v. David, supra, a suit by a landlord against a tenant for recovery of rent owed, defendant contended that he did not owe rent because he was not a tenant during the time alleged. The defendant was, however, denied that defense, this court stating on appeal that " * * * we think *any* question of appellant's tenancy is foreclosed by the judgment in the previous *possessory* action." (Emphasis supplied.) 140 A.2d 317.

1. Edwards v. Habib, D.C.App., 227 A.2d 388 (1967); Bess v. David, D.C.Mun. App., 140 A.2d 316 (1958); David v. Nemerofsky, D.C.Mun.App., 41 A.2d 838 (1945).

■ Thus, because the validity of the lease and the determination that rent is owing will be irrevocably established in this case if the judgment of the trial court is allowed to stand,[2] we feel that this appeal is timely made.

Although appellant notes a number of errors, we consider the allegation that the trial court erred in failing to declare the lease agreement void as an illegal contract both meritorious and completely dispositive, and for this reason we reverse.

The evidence developed, at the trial, revealed that prior to the signing of the lease agreement, appellee was on notice that certain Housing Code violations existed on the premises in question. An inspector for the District of Columbia Housing Division of the Department of Licenses and Inspections testified that the violations, an obstructed commode, a broken railing and insufficient ceiling height in the basement, existed at least some months prior to the lease agreement and had not been abated at the time of trial. He also stated that the basement violations prohibited the use of the entire basement as a dwelling place. Counsel for appellant at the trial below elicited an admission from the appellee that "he told the defendant after the lease had been signed that the back room of the basement was habitable despite the Housing Code Violations." In addition, a Mr. Sinkler Penn, the owner of the premises in question, was called as an adverse witness by the defense. He testified that "he had submitted a sworn statement to the Housing Division on December 8, 1964 to the effect that the basement was unoccupied at that time and would continue to be kept vacant until the violations were corrected."

This evidence having been established and uncontroverted, appellant contends that the lease should have been declared unenforceable because it was entered into in contravention to the District of Columbia Housing Regulations, and knowingly so.

Section 2304 of the District of Columbia Housing Regulations reads as follows:

No persons shall rent or offer to rent any habitation, or the furnishings thereof, unless such habitation and its furnishings are in a clean, safe and sanitary condition, in repair, and free from rodents or vermin.

Section 2501 of these same Regulations, states:

Every premises accomodating one or more habitations shall be maintained and kept in repair so as to provide decent living accomodations for the occupants. This part of the Code contemplates more than mere basic repairs and maintenance to keep out the elements; its purpose is to include repairs and maintenance designed to make a premises or neighborhood healthy and safe.

■ It appears that the violations known by appellee to be existing on the leasehold at the time of the signing of the lease agreement were of a nature to make the "habitation" unsafe and unsanitary. Neither had the premises been maintained or repaired to the degree. contemplated by the regulations, i. e., "designed to make a premises * * * healthy and safe." The lease contract was, therefore, entered into in violation of ·the Housing Regulations requiring that they be safe and sanitary and that they be properly maintained.

In the case of Hartman v. Lubar, 77 U.S. App.D.C. 95, 96, 133 F.2d 44, 45 (1942), cert. denied, 319 U.S. 767, 63 S.Ct. 1329, 87 L.Ed. 1716 (1943), the court stated that,

---

2. Note in Bess v. David, supra, this court cited with approval the following language from McCotter v. Flinn, 30 Misc. 119, 61 N.Y.S. 786, 787 (1899) : "A judgment taken by default in summary proceedings by a landlord for non-payment of rent is conclusive between the parties as to the existence and *validity* of the lease, the occupation by the tenant, and that *rent is due*, and also as to any other facts alleged in the petition or affidavit which are required to be alleged as a basis of the proceedings." (Emphasis supplied.)

"[t]he general rule is that an illegal contract, made in violation of the statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer."[3] The court in Lloyd v. Johnson, 45 App.D.C. 322, 327 (1916), indicated:

> To this general rule, however, the courts have found exceptions. For the exception, resort must be had to the intent of the legislature, as well as the subject matter of the legislation. The test for the application of the exception is pointed out in Pangborn v. Westlake, 36 Iowa 546, 549, and approved in Miller v. Ammon, 145 U.S. 421, 426, 36 L.Ed. 759, 762, 12 Sup.Ct.Rep. 884, as follows: "We are, therefore, brought to the true test, which is, that while, as a general rule, a penalty implies a prohibition, yet the courts will always look to the subject matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if, from all these, it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the court will so hold and construe the statute accordingly."

Applying this general rule to the Housing Regulations, it may be stated initially that they do provide for penalties for violations.[4] A reading of Sections 2304 and 2501 infers that the Commissioners of the District of Columbia, in promulgating these Housing Regulations, were endeavoring to regulate the rental of housing in the District and to insure for the prospective tenants that these rental units would be "habitable" and maintained as such.[5] The public policy considerations are adequately stated in Section 2101 of the District of Columbia Housing Regulations, entitled "Purpose of Regulations." To uphold the validity of this lease agreement, in light of the defects known to be existing on the leasehold prior to the agreement (i. e., obstructed commode, broken railing, and insufficient ceiling height in the basement), would be to flout the evident purposes for which Sections 2304 and 2501 were enacted. The more reasonable view is, therefore, that where such conditions exist on a leasehold prior to an agreement to lease, the letting of such premises constitutes a violation of Sections 2304 and 2501 of the Housing Regulations, and that these Sections do indeed "imply a prohibition" so as "to render the prohibited act void." Neither does there exist any reason to treat a lease agreement differently from any other contract in this regard.[6]

Thus, for this reason and those stated above, we reverse.

Reversed.

3. See also Kirschner v. Klavik, D.C.Mun.App., 186 A.2d 227 (1962), and Rubin v. Douglas, D.C.Mun.App., 59 A.2d 690 (1948).

4. See Washington, D. C., Housing Regulations, § 2104 (1955).

5. Note the use of the word "shall" in both §§ 2304 and 2501 of the Housing Regulations. The word "shall" ordinarily connotes language of command. Anderson v. Yungkau, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947); Ballou v. Kemp, 68 U.S.App.D.C. 7, 92 F.2d 556 (1937).

6. See Jess Fisher & Co. v. Hicks, D.C.Mun.App., 86 A.2d 177 (1952), where a lease agreement was held ineffective because it violated the District of Columbia Rent Control Act. Cf. Amos v. Cummings, D.C.Mun.App., 67 A.2d 687 (1949).