Errol A. JONES, Appellant,

v.

Charles E. SHEETZ t/a C. H. Parker Company, Appellee.

No. 4112.

District of Columbia Court of Appeals.

Argued March 11, 1968.

Decided May 29, 1968.

---

Brian Michael Olmstead, Washington, for appellant.

Joseph H. Schneider, Washington, with whom Albert Ginsberg and Herbert D. Horowitz, Washington, were on the brief, for appellee.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

MYERS, Associate Judge:

This appeal by a tenant is from a judgment in the Landlord and Tenant Branch of the trial court restoring possession of improved real property to the landlord.

The record discloses that on January 19, 1962, the tenant executed an agreement for the lease of a house from appellee on a month-to-month basis at a rental of $135 per month. The agreement specified that the house was to be used as a "private dwelling and for no other purpose whatsoever" and that the tenant must "comply with all laws and all health, fire and police regulations with respect to said premises." To regain possession, the landlord was obliged to give the tenant a 30-day written notice to quit, but in the event the tenant failed to comply with any provision of the lease, the 30-day notice was waived. The required monthly rental was paid until January 1966.

On March 29, 1966, appellee filed a complaint for possession of real estate in the Landlord and Tenant Branch of the trial court, alleging the tenant's violation of the rental agreement by using the premises for an unlawful purpose and failing to comply with health, fire and police regulations. At trial and before us the tenant contended that the rental agreement was void from the date of its execution because various violations of the Housing Regulations of the District of Columbia existed when he took possession. After review of the records of the Housing Division of the Department of Licenses and Inspections, the trial judge found that no violations of the Housing Regulations existed when the tenant acquired possession. The fact upon which the tenant bases his appellate argument was thus not proven at trial and the argument before us must therefore fail.

The tenant next argues that two provisions of the rental agreement render it unenforceable: (I) the clause requiring the tenant to "comply with all laws and all health, fire and police regulations," and (II) the provision for waiver of the 30-day notice in the event the tenant violated any provision of the lease. He also contends that the trial judge, in deciding whether the agreement was unconscionable, erred in failing to consider the commercial setting in which the rental agreement was executed.

I

The requirement that the tenant "comply with all laws and all health, fire and police regulations" means only that he must comply with the legal requirements and restrictions usually placed upon

tenants.[1] It does not shift the burden of compliance with other laws and regulations from the landlord to the tenant. This was, in fact, the understanding between the parties in the present case. During the period of occupancy, the landlord made repairs and also reimbursed the tenant when work done was of the kind for which a landlord is responsible. The clause challenged by the tenant did not compel him to expend unusually large sums of money, as he contends. Furthermore, the terms of the rental agreement are not so one-sided as to make it apparent "from the intrinsic nature and subject of the bargain itself" that "no man in his senses and not under delusion" would make such a bargain. Williams v. Walker-Thomas Furniture Co., 121 U.S.App.D.C. 315, 319, 350 F.2d 445, 449 (1965), f. 7, quoting Lord Hardwicke in Earl of Chesterfield v. Janssen, 28 Eng. Rep. 82, 100 (1751).

## II

■ Waiver of the 30-day notice provision was conditioned upon the failure of the tenant to comply with the provisions of the lease. The tenant thus had complete control over the landlord's ability to invoke this clause. As long as the tenant complied with the provisions of the rental agreement, the landlord had to furnish the tenant with written notice to quit. It is not unfair or unreasonable to expect compliance by a tenant with provisions of an agreement which are not unconscionable and do not unfairly burden him.

## III

■ The record also convinces us that the trial judge did consider the background in which the lease was signed. He specifically took note of the fact that the tenant was an educated man who had completed three years of law school, regularly worked as a tax consultant, and was not likely to execute a legal agreement he did not fully read and understand. The trial judge also observed that although the lease was only a month-to-month agreement, the tenant occupied the house for more than four years before claiming that the rental agreement was oppressive and had been executed under duress. Such a long tenancy considerably dilutes the tenant's argument that he was forced to sign the agreement because a housing shortage had left him with no other place to live. After taking evidence of the circumstances surrounding the signing of the agreement, the trial judge found that the tenant was neither tricked nor coerced into signing an agreement which he did not understand and which embodied terms he did not approve. This ruling is supported by substantial evidence in the record.

Accordingly, the trial judge correctly found that the tenant did not carry his responsibility of showing that the agreement or the circumstances surrounding its execution were so one-sided as to prohibit its enforcement.

## IV

The tenant next argues that, conceding the initial validity of the lease, the landlord did not establish his right to receive rent payments.

Immediately after the lease was executed, the tenant took possession and occupied the house continuously until the date of the trial. Although the lease specified that the house was to be used only as a single-family dwelling, the tenant leased some of the bedrooms to roomers and also installed kitchen and plumbing equipment in the basement in order to sublet it. In 1965 the

---

1. Housing Regulations of the District of Columbia, Section 2601—Responsibility. In those portions of premises occupied for residential purposes under the exclusive control of a tenant, it shall be the responsibility of such tenant to observe the provisions of this part [of the regulations dealing with cleanliness and sanitation] * * *.

tenant applied for a license to operate the house as a "flat," a two-family dwelling. The Housing Division of the Department of Licenses and Inspections inspected the premises and notified the tenant that 72 violations of the Housing Regulations had been found. Appellant then withdrew his application. The Department thereupon cancelled the notice of violations issued against the tenant and issued an almost identical notice against the landlord.

In December 1965 the landlord served written notice to quit upon the tenant and then brought an action for possession.[2] The tenant contested his eviction and demanded a jury trial. The landlord refused to accept rent during the pendency of the suit. At trial on March 25, 1966, the tenant proved that notice to quit had not been properly served on him and judgment was entered permitting the tenant to remain in possession.

When the monthly rent came due on March 26, 1966, it was not paid. The landlord then filed a new possessory action alleging (1) nonpayment of rent from January 26, 1966, and (2) violation of the rental agreement by using the premises for an unlawful purpose and failing to comply with the applicable laws.

■■■ Part of the rent sought in the present case became due after the judgment in the prior case permitted the tenant to remain in possession. The landlord's refusal to accept the rent tendered during the pendency of the first suit does not constitute a waiver by the landlord of his right to receive rent in the future.

The trial judge ruled that the tenant had not paid the rent that became due after

judgment in the first case. This finding was sufficient ground for granting a judgment of possession. Under these circumstances, it is not necessary to review the trial court's finding that the tenant also violated other parts of the rental agreement.

V

■■■ The tenant also argues that he was relieved of the liability to pay rent under the lease because of the existence of housing violations.

The Housing Regulations impose a duty upon the landlord to maintain rented premises in a healthy and safe condition. The tenant contends that violation of these regulations creates a cause of action in the tenant which may be used as a setoff under Rule 4(c) [3] of the rules of the Landlord and Tenant Branch of the trial court.

Again, the tenant has failed to establish factual support for his argument. He did not prove to the satisfaction of the trial judge that the housing violations existed because of the landlord's neglect or refusal to make repairs, or that the violations made the house unhealthy or unsafe. Furthermore, he made no attempt to prove the extent to which the violations offset his liability for rent due under his lease.

A large number of the violations were found in the basement. It does not appear that any of the conditions cited by the housing inspectors would be violations if the tenant had not converted the basement for residential use. In addition, a large number of the violations in the remainder of the house were violations of Article 260 of the Housing Regulations. These were

2. The trial court found no evidence that the notice to quit was in retaliation for the tenant's having brought the existence of housing violations to the attention of governmental authorities. See Edwards v. Habib, No. 20,883, 129 U.S.App. D.C. —— (decided May 17, 1968).

3. In suits * * * for recovery of possession of property in which the basis of recovery of possession is nonpayment of rent, tenants may set up an equitable defense or claim by way of recoupment or set-off in an amount equal to the rent claim. No counterclaim may be filed unless plaintiff asks for money judgment for rent. * * *

charged to the landlord only because the house was erroneously listed as a two-family dwelling by the Housing Division of the Department of Licenses and Inspections. If the house had been used as a single-family dwelling, as specified in the lease, the correction of these violations would have been the responsibility of the tenant and not of the landlord.[4] Cf. Section 2601 of the Housing Regulations, supra n. 1.

For the foregoing reasons, the judgment of the trial court is

Affirmed.

---

4. How many of the remaining violations were related to and caused by the ten-ant's misuse and damage to the house is not clear.