Rudolph SAUNDERS, Appellant,

v.

FIRST NATIONAL REALTY CORPORA-
TION, Appellee.

Ethel JAVINS, Appellant,

v.

FIRST NATIONAL REALTY CORPORA-
TION, Appellee.

Gladys GRANT, Appellant,

v.

FIRST NATIONAL REALTY CORPORA-
TION, Appellee.

Stanley GROSS, Sr., Appellant,

v.

FIRST NATIONAL REALTY CORPORA-
TION, Appellee.

Nos. 4119–4122.

District of Columbia Court of Appeals.

Argued March 11, 1968.

Decided Sept. 23, 1968.

Edmund E. Fleming, Des Moines, Iowa, for appellants.

Herman Miller, Washington, D.C., for appellee.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

HOOD, Chief Judge:

Appellants were tenants in a large apartment complex known as Clifton Terrace. Their landlord, the appellee, filed separate actions against them for possession because of nonpayment of rent. Represented by the same counsel, appellants demanded trial by jury and presented identical defenses. At trial appellants offered to prove:

> That there are approximately 1500 violations of the Housing Regulations of the District of Columbia in the building at Clifton Terrace, where Defendant resides some affecting the premises of this Defendant directly, others, indirectly, and all tending to establish a course of conduct of violation of the Housing Regulations to the damage of Defendants and of others similarly situated.

This offer of proof was rejected by the trial court, and counsel for appellants then advised the court that without such evidence there were no issues to be tried. Accordingly the court entered judgment for possession in each of the cases.

We first consider appellee's claim that these cases are moot. This claim is based on appellee's assertion (not disputed by appellants) that three of appellants have voluntarily moved from the premises and the fourth has voluntarily paid his rent and continues to pay rent to the new owner of the apartment house, and that appellee, having sold the apartment house, has no claim to possession of the four apartments. The argument is that since the actions sought possession only and possession is no longer in dispute, the appeals are moot.

■ Where legal issues raised on appeal would be res judicata between the parties in a subsequent proceeding, an appeal should not be dismissed even though the main controversy has become moot.[1] In Brown v. Southall Realty Co., D.C.App., 237 A.2d 834 (1968), we recognized that rights regarding the validity of a lease and the amount of rent due under it would be irrevocably established if the judgment in a possessory action for nonpayment of rent was allowed to stand. Since appellants here contended that no rents were due because of appellee's violations of the Housing Regulations, we believe a decision on the merits of the appeal is necessary.

Two arguments are advanced by appellants. The first, made at oral argument, is that under our ruling in Brown v. Southall Realty Co., supra, if violations of the Housing Regulations occur during the tenancy (appellants conceded they could not prove the existence of any of the alleged violations at the commencement of the tenancies) and the landlord failed to correct them, the lease becomes illegal and void. Our holding in *Southall* was that where the owner of dwelling property, knowing that Housing Code violations exist on the property which render it unsafe and unsanitary,

---

1. 5 Am.Jur.2d, Appeal & Error, § 766.

executes a lease for the property, such lease is void and cannot be enforced. We did not hold and we now refuse to hold that violations occurring after the tenancy is created void the lease.

Appellants' main argument, advanced in their brief, is that the Housing Regulations have abrogated the common law relation between landlord and tenant and have created a contractual duty on the landlord to comply with the Regulations. From this premise appellants argue that if the landlord fails to comply, the tenant, in an action for possession for nonpayment of rent, may use such failure as "an equitable defense or claim by way of recoupment or set-off in an amount equal to the rent claim" under Rule 4(c) of the Landlord and Tenant Branch of the trial court. This rule limits the landlord's basis for recovery of possession where the consideration for the rent has failed wholly or in part because of the landlord's breach of an express or implied lease obligation, and modifies the common law rule of independent covenants in the lease.[2] Therefore, if appellee had a contractual duty to maintain the premises in compliance with the Housing Regulations, appellants may properly defend by way of set-off against the rent owed.

■■ The long established rule in this jurisdiction, following the common law, is that, in the absence of statute or express covenant in the lease, a landlord does not impliedly covenant or warrant that the leased premises are in habitable condition and the landlord is not obligated to make ordinary repairs to the leased premises in the exclusive control of the tenant. The question here presented is whether the Housing Regulations impose upon the landlord a contractual duty to maintain premises in compliance with the Regulations.

In both Edwards v. Habib, D.C.Cir., 397 F.2d 687 (decided May 17, 1968) and Whetzel v. Jess Fisher Management Co., 108 U.S.App.D.C. 385, 282 F.2d 943 (1960), the court implied that the Housing Regulations have the force and effect of statute, and for present purposes we will so treat the Regulations. Assuming, but not deciding, that in enacting the Regulations the Commissioners of the District of Columbia had the power to impose upon landlords a contractual duty, enforceable by tenants, to comply with the Regulations, the question is did they intend to do so and bring about a drastic change in the landlord and tenant law of this jurisdiction.

■■ "No statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express." Shaw v. Railroad Co., 101 U.S. 557, 565, 25 L.Ed. 892 (1880), quoted with approval in Robert C. Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 304–305, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959).[3] We find nothing in the Housing Regulations expressly or necessarily implying that a contractual duty is imposed on the landlords to comply with the Regulations. There are express provisions for punishment by fine or imprisonment,[4] or suspension or revocation of a landlord's housing business license,[5] as sanctions for violation of the Regulations. In some jurisdictions where similar penalties have been imposed, the enacting body has gone farther and provided a variety of tenant remedies,[6] but we have no such provision here. Where, as here, the regulations or statute merely impose a penalty for failure to repair and maintain the leased premises in a habitable condition the courts have refused to enlarge the scope of the landlord-tenant re-

2. See Seidenberg v. Burka, D.C.Mun.App., 106 A.2d 499 (1954); Mitchell v. David, D.C.Mun.App., 51 A.2d 375 (1947).

3. See also 82 C.J.S. Statutes § 363.

4. Housing Regulations §§ 2104, 3303.

5. Housing Regulations § 3102.3.

6. See for example, New York Real Property Actions Law, McKinney Consol.Laws, c. 81, 769 et seq.; Cal.Civ.Code § 1942; N.Dak. Century Code § 47–16–13.

lation by subjecting the landlord to implied contractual obligations.[7]

Had the Commissioners intended that the Regulations impose a contractual duty on landlords enforceable by tenants (again we assume but do not decide that the Commissioners had the power to do so), we think they would have made such intention clear and not left it to conjecture. We see some very practical reasons why the Commissioners may have felt that enforcement of the Regulations should be left to the trained personnel authorized to administer the Regulations. The Regulations are broad in scope and in many instances are expressed in general language, leaving room for the exercise of judgment by those enforcing the Regulations. For example, we find scattered throughout the Regulations expressions such as "good repair", "good condition", "clean", "kept painted", "properly connected", "normal occupancy", "normal demands", "wide cracks", "adequate", etc. These and other like expressions in the Regulations do not state exact standards but leave considerable margin to the judgment of the enforcing authorities.

We cannot believe that the Commissioners intended that the single violation of any of the Regulations for any length of time would give ground for defending against payment of rent in whole or in part. And if a minor infraction of the Regulations for a brief period gives rise to no defense to a claim for rent, neither will a more serious violation for a greater length of time, because the Regulations furnish no standard for differentiating between consequential and inconsequential violations.

Appellants argue that Whetzel v. Jess Fisher Management Co., 108 U.S.App. D.C. 385, 282 F.2d 943 (1960), supports their contention. We do not so read that case. We understand it to hold that where a landlord negligently fails to comply with the Housing Regulations and as a result the tenant is injured, the tenant may sue the landlord in tort. This was simply an application of the rule that a private action for negligence may be based upon violation of a penal statute where the injured party is within the class of persons the statute intended to protect and the injury was of the type the statute intended to prevent.[8] *Whetzel* did not hold that the Housing Regulations enlarge the contractual duties of a landlord.

Our conclusion is that under the established law of this jurisdiction the landlord's violations of the Housing Regulations is not a defense to his action for possession based on nonpayment of rent.

Affirmed.

7. Rubinger v. Del Monte, 217 N.Y.S.2d 792 (N.Y.Sup.Ct., 1961); Davar Holdings, Inc. v. Cohen, 255 App.Div. 445, 7 N.Y.S. 2d 911 (1938), aff'd, 280 N.Y. 828, 21 N.E.2d 882; Metcalf v. Chiprin, 217 Cal. App.2d 305, 31 Cal.Rptr. 571 (1963). See also, Peters v. Kelly, 98 N.J.Super. 441, 237 A.2d 635 (1968).

8. Wyandotte Transportation Co. v. United States, 389 U.S. 191, 202 (1967).