**DIAMOND HOUSING CORPORATION,**
a corporation, Appellant,

v.

Lena ROBINSON, Appellee.

Nos. 4834, 4864.

District of Columbia Court of Appeals.

Argued June 16, 1969.

Decided Oct. 15, 1969.

Herman Miller, Washington, D. C., for appellant.

Richard B. Wolf, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and KELLY and FICKLING, Associate Judges.

HOOD, Chief Judge:

Appellant-landlord initiated two successive suits for possession of an unfurnished house leased to appellee-tenant which resulted in judgment in both cases for appellee. In the first suit (Appeal No. 4834), appellant sought possession under a written lease for nonpayment of rent. Appellee raised two defenses to the claim for possession: (1) She had not waived her statutory right of thirty days' notice to quit; and (2) that the written lease was void and unenforceable because it was an illegal agreement. The jury in the trial below rendered special verdicts in favor of appellee on each defense.

Appellee's first defense is that the lease provision for waiver of the statutory right of thirty days' notice to quit[1] in the event the tenant fails to pay the agreed upon rent was unconscionable under the circumstances of this case. Appellee testified at trial that she had a limited education and that she did not understand the term "notice to quit" and several other terms contained in the lease. She admitted that she did not attempt to ascertain the meaning of the lease before signing it.

■ The general rule is that, in the absence of fraud, duress or mistake, "[o]ne who signs a contract which he had an op-

portunity to read and understand is bound by its provisions"[2] unless enforcement of the agreement should be withheld because the terms of the contract are unconscionable.[3] Since there is no evidence in the record of fraud, duress or mistake, and appellee testified that she had an opportunity to read the lease before signing it, the issue before us is whether the notice to quit waiver provision is an unconscionable term.

In Williams v. Walker-Thomas Furniture Co., 121 U.S.App.D.C. 315, 319, 350 F. 2d 445, 449 (1965), it was established that two elements are required to exist to prove unconscionability; i. e., "an absence of meaningful choice on the part of one of the parties together with contract terms which are *unreasonably favorable to the other party*." (Emphasis added.) Although a jury in the present case could have found an "absence of meaningful choice" because of appellee's unequal bargaining position and her ignorance of the meaning of the lease provisions, there is not basis for a finding that a waiver of notice to quit for nonpayment of rent is unreasonable or unfair. Such a provision is commonly found in all landlord-tenant agreements, not merely agreements between landlords and indigent tenants. It also appears intrinsically fair that a tenant who does not have a defense or claim to offset the agreed upon rent[4] should not be allowed to retain possession of the leased premises.[5] As we previously stated in Jones v. Sheetz, D.C.App., 242 A.2d 208, 210 (1968):

Waiver of the 30-day notice provision was conditioned upon the failure of the tenant to comply with the provisions of

---

1. D.C.Code 1967, §§ 45–902 and 45–908.

2. Paterson v. Reeves, 113 U.S.App.D.C. 74, 75, 304 F.2d 950, 951 (1962). *See also* Gagnon v. Wright, D.C.App., 200 A. 2d 196 (1964). In Spritz v. Lishner, Mass., 243 N.E.2d 163, 164 (1969), the court quoting from Cohen v. Santoianni, 330 Mass. 187, 112 N.E.2d 267 (1953), stated: "The general rule is that, in the absence of fraud, one who signs a written agreement is bound by its terms whether

he reads and understands it or not or whether he can read or not."

3. Williams v. Walker-Thomas Furniture Co., 121 U.S.App.D.C. 315, 350 F.2d 445 (1965).

4. *See* Saunders v. First National Realty Corp., D.C.App., 245 A.2d 836, 838 (1968).

5. H. L. Rust Co. v. Drury, 62 App.D.C. 329, 68 F.2d 167 (1933).

the lease. The tenant thus had complete control over the landlord's ability to invoke this clause. As long as the tenant complied with the provisions of the rental agreement, the landlord had to furnish the tenant with written notice to quit. It is not unfair or unreasonable to expect compliance by a tenant with provisions of an agreement which are not unconscionable and do not unfairly burden him.

Appellee also argues that the landlord should be required to orally explain the waiver provision to the prospective tenant. However, we find no basis to impose such a duty upon the landlord.

■ In the present case the waiver of notice to quit provision is not hidden or obscured by the other provisions of the printed lease agreement, and attention is drawn to the waiver provision by the fact that the words "notice to quit" are printed in a larger and bolder typeface. There appears to be no reason why appellee should not be bound by her signed agreement. We therefore hold that it was error for the trial court to submit the question of appellee's waiver of notice to quit to the jury.

Appellee relies on our decision in Brown v. Southall Realty Co., D.C.App., 237 A.2d 834 (1968), as the basis of her second defense that the lease is void and unenforceable. In Brown we held that where a landlord leases a premises knowing that Housing Code violations exist on the premises which render it unsafe and unsanitary, such lease is illegal and void and cannot be the basis of the landlord's cause of action.

■ In the present case, the jury made a special finding that there were substantial violations of the Housing Regulations existing on the premises at the time that the lease was signed, "that those vio-

lations were of a quality and kind sufficient to render the premises unsafe and unsanitary, and that [appellant] actually knew or should have known of the existence of those violations." [6] It is appellant's contention that even if there were defective conditions on the leased premises which significantly impaired its habitability, the fact that he had not received official notice of the existence of Housing Code violations from the city's housing inspectors would distinguish the present case from the facts in Brown, and would preclude the jury's finding that the lease was void and unenforceable. Appellant is correct that in Brown there had been official citations of Housing Code violations. However, our opinion was based on the fact that the lease agreement had knowingly been made in violation of a housing regulation. The illegality found in Brown was not based on the existence of conditions which violated the Housing Regulations per se—a technical or minor violation would not render the lease void—but rather on violations coupled with the purpose of the Regulations which prohibited the leasing of uninhabitable dwellings. Violations of the Housing Regulations may exist even though city officials have not inspected the premises and cited the defective conditions. Gay v. District of Columbia, D.C.App., 202 A.2d 399 (1964). Consequently, the rationale of Brown must logically be applied to the present case. [7] Therefore, the jury's special verdict that the lease is void and unenforceable must be upheld.

Subsequent to the jury's verdict in favor of appellee, appellant filed two post trial motions: The first was for judgment n. o. v. on the grounds that appellee's successful defense of illegal contract was a rescission of the contract, and therefore appellee was required to relinquish possession of the leased premises; and the second motion was for judgment of possession and assess-

6. During oral argument, appellant's counsel stated that his client was not challenging the factual findings of the jury.

7. See also Gaddis v. Dixie Realty Co., D. C.App., 248 A.2d 820, 821 n. 4 (1969).

ment of damages for trespass. The trial court denied both motions, and appellant claims error.

■ Appellant contends that the determination that a lease is void and unenforceable results in a rescission of the lease agreement, and requires the tenant to return possession of the premises. We do not agree. It is well established that an agreement entered into in violation of the law creates no rights upon the wrongdoer.[8] The defense of illegality does not rescind the illegal agreement, but merely prevents a party from using the courts to enforce such an agreement.

■ Appellant's final argument is that the determination that the lease is void terminates the landlord-tenant relationship between the parties and causes appellee to become a trespasser on appellant's property.[9] Such an argument, however, is contrary to the great weight of authority. The generally accepted view is that entry upon a premises under a void and unenforceable lease creates a tenancy at will.[10] However, in this jurisdiction an estate at will must be created by express contract, and can arise by implication of law in only one specified situation not here applicable;[11] but we do have a statutory estate by sufferance[12] which is in the nature of an estate from month to month or an estate at will.[13]

We hold that appellee, having entered possession under a void and unenforceable lease, was not a trespasser but became a tenant at sufferance. Consequently, appellant was not entitled to relief under its theory that appellee be treated as a trespasser.

■ In view of the fact that our opinion in Brown v. Southall Realty Co., *supra,* has caused some confusion regarding the proper procedure for a landlord to regain possession when the lease has been held illegal and unenforceable, we add the following. When it is established that a lease is void and unenforceable under the Brown v. Southall ruling, the tenant becomes a tenant at sufferance and the tenancy, like any other tenancy at sufferance, may be terminated on thirty days' notice. The Housing Regulations do not compel an owner of housing property to rent his property. Where, as here, it has been determined that the property when rented was not habitable, that is, not safe and sanitary, and should not have been rented, and if the landlord is unwilling or unable to put the property in a habitable condition, he may and should promptly terminate the tenancy and withdraw the property from the rental market, because the Regulations forbid both the rental and the occupancy of such premises.[14]

Affirmed.

---

8. Hartman v. Lubar, 77 U.S.App.D.C. 95, 96, 133 F.2d 44, 45 (1942), cert. denied, 319 U.S. 767, 63 S.Ct. 1329, 87 L.Ed. 1716 (1943); Brown v. Southall Realty Co., *supra.*

9. Appellant makes the same argument in his appeal from a judgment for appellee in a second possessory action (Appeal No. 4864). The trial court held that its prior determination that appellee was not a trespasser was res judicata in the second action. We believe that the following discussion on this issue will dispose of appellant's claim of error in both appeals, and we need not decide whether res judicata is applicable in the second suit.

10. Meyer v. United States, 150 F.Supp. 314, 138 Ct.Cl. 86 (1957); 3 Thompson on Real Property § 1018. *See also* cases cited in annot. 6 A.L.R.2d 685.

11. D.C.Code 1967, § 45-822.

12. *See* Hampton v. Mott Motors, D.C.Mun. App., 32 A.2d 247 (1943).

13. *See* Keroes v. Westchester Apartments, D.C.Mun.App., 36 A.2d 263 (1944).

14. Section 2301. "No owner, licensee, or tenant shall occupy or permit the occupancy of any habitation in violation of these regulations."