Gwendolyn CURRY et al., Appellants,

v.

DUNBAR HOUSE, INC., Appellee.

Kulia JACKSON et al., Appellants,

v.

Theodore HAGAN, t/a Dunbar House, Inc., Appellee.

Nos. 7331, 7332.

District of Columbia Court of Appeals.

Argued Nov. 25, 1974.

Decided Aug. 3, 1976.
Rehearing and Rehearing en Banc
Denied Oct. 20, 1976.

687

Jerome Morris, Washington, D.C., for appellants.

Herman Miller, Washington, D.C., for appellee.

* FICKLING, Associate Judge, concurs in the result.

Before FICKLING, GALLAGHER and HARRIS, Associate Judges.*

HARRIS, Associate Judge:

These are consolidated appeals from two orders of the Landlord and Tenant Branch of the Civil Division of the Superior Court entered in possessory actions for nonpayment of rent. The cases arose from a combination of (1) housing code violations, and (2) the sale of the apartment house, with the new owner quite logically neither seeking to evict all existing tenants nor being able to obtain immediately the requisite governmental licenses.

In December 1972, the landlord, Dunbar House, filed suits for possession for nonpayment of rent against the appellants in our No. 7332. In January 1973, similar suits were filed against the appellants in our No. 7331. The actions were tried separately, before different judges. In each the tenants claimed that their nonpayment of rent was justified by the landlord's breach of its warranty of habitability. Further, the tenants asserted, as an absolute bar to the suits, the fact that the landlord did not have a certificate of occupancy or a housing business license as required by law.

In the cases included in our No. 7331, the trial court granted the landlord the requested relief and refused to award the tenants any rent reductions. In order to avoid eviction the tenants were required to tender the entire amount of rent in arrears, as measured by the obligations assumed in their leases. In the cases included in our No. 7332, the court found that appellants were entitled to abatements of rent. Agreeing that the possessory suits were maintainable despite the lack of the licenses, the court ordered the tenants to pay the reduced rents due or face eviction.

Appellants challenge the rulings in both cases. They contend that appellee was

barred from instituting any action for possession of the rented premises because it was without a housing business license or a certificate of occupancy. We disagree, and conclude that appellee was not precluded from maintaining the actions. However, in our view the trial court erred in the No. 7331 cases by failing to find that a part of the tenants' obligations to pay rent had been suspended by the landlord's breach of its warranty of habitability. We therefore reverse in No. 7331. We affirm in No. 7332.

■ Appellee contends as a threshold proposition that the appeals of the two named appellants are moot because they since have voluntarily vacated the premises. However, the fact that those tenants have vacated their apartments does not moot either appeal. As mentioned, the issue on appeal is whether the failure to have the required license and certificate precluded the landlord's action for possession in the first instance. The named appellants' continuing interest in the appeal lies in the fact that prior to voluntarily surrendering possession of their respective apartments, they paid the rent arrearages to the landlord in order to avoid immediate eviction. They correctly argue that should this court find that the trial court erred in the conclusion that the landlord could pursue the actions, those appellants might be entitled to a refund of all rent paid for the period during which Dunbar House was unlicensed. Their interest in the outcome of this appeal therefore is unaffected by the relinquishment of possession of the apartments. Cf. *Saunders v. First National Realty Corporation*, D.C.App., 245 A.2d 836, 837 (1968), *rev'd on other grounds sub nom. Javins v. First National Realty Corp.*, 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied*, 400 U.S. 925, 91 S.Ct.

186, 27 L.Ed.2d 185 (1970); *Brown v. Southall Realty Co.*, D.C.App., 237 A.2d 834, 835–36 (1968).

The premises in question are in the Cavalier Apartments, located at 3500—14th Street, N.W. Appellee acquired the building in November 1972. At the time of that acquisition, there was an outstanding notice of numerous violations of the housing code. Appellee officially was notified of the existence of the violations just after it became the owner. In December 1972, the tenants began to withhold their monthly rental payments, citing as justification therefor the condition of their respective apartments and the common areaways. Subsequent inspections of the premises by the Housing Inspector found the violations substantially unabated.[1]

Any person operating an apartment house in the District of Columbia is required to have a certificate of occupancy[2] and a housing business license.[3] At the time appellee purchased the Cavalier Apartments, the previous owner was in possession of neither of the required documents, although the previous owner had applied for renewal of its housing license. However, the license renewal had not yet been granted, presumably due to the existence of housing code violations. Subsequently, in January 1973, appellee Dunbar House applied for both a housing license and a certificate of occupancy. By the time of the conclusion of the trials, the District still had not issued the licenses to appellee. While the failure to issue them presumably was occasioned by the uncorrected condition of the premises, the record does not eliminate the possibility that the delay was attributable simply to administrative inefficiency. In the cases included in our No. 7332, the trial court found, as a matter of law, that "[t]he fact that Plain-

---

[1]. Inspection by the Fire Inspector in January 1973 revealed numerous fire code violations, including a defective alarm system and several inoperative fire extinguishers. However, the trial court found that most of the fire code violations had been corrected.

[2]. *See* D.C.Code 1973, § 5–422; D.C. Zoning Regs. § 8104.

[3]. *See* D.C.Code 1973, §§ 47–2301, –2328; D.C. Housing Regs. § 3102.

tiff has applied for but has not as yet received the necessary licenses and certificates does not under the circumstances of this case prevent the Plaintiff from prosecuting the action nor does it free the tenants from the obligation of paying reasonable rents." · The court also found that the leases were "valid instruments creating a Landlord-Tenant relationship between the Plaintiff and Defendants" in that they had been "validly assigned to Plaintiff". In the cases included in our No. 7331, the trial court made no mention of this aspect of the tenants' defense and rested its judgment for the landlord on what it perceived to be its "diligent efforts" to correct the violations "of substance" and the defendants' "sudden" and implicitly opportunistic decisions to withhold rent.

The main thrust of appellants' argument is that the licensing program to which appellee failed to adhere is an essential part of the legislative effort to ensure the health and safety of District citizens through the maintenance of minimal standards of housing quality. They contend that to allow a landlord to enforce any claims involving unlicensed premises would frustrate the purposes of the licensing regulations and imperil the public welfare. If appellants' claim were accepted by us, the ultimate effect of the principle urged by appellants would be that appellee would not be entitled either to rent for or possession of the unlicensed property. We could not acquiesce in such an inequitable result.

█ Appellants undoubtedly are correct in asserting that the system of licensing, inspections, notifications, and penalties set forth in the housing code was designed to encourage compliance with the housing code, and that the code itself was established to secure fit places of dwelling for the city's tenants. We have never held, however, that a landlord who operates premises in violation of the Housing Regulations thereby is enjoined from maintaining an action to recover possession for

nonpayment of rent. Rather, the landlord's breach of the warranty of habitability, as measured by substantial violations of the housing code, can be interposed by a tenant as a defense, in whole or in part, to the landlord's claim that possession should be surrendered because rent is owed. Moreover, if any violations of the regulations arise after the commencement of the lease, they do not serve to void the lease and render it unenforceable. *See Saunders v. First National Realty Corp., supra,* 245 A.2d at 837–38; *Javins v. First National Realty Corp., supra.*

█ We perceive no reason, under the facts of this case, to treat the landlord's violation of law in failing to procure the required licenses any differently than we treat the landlord's violation of law in failing to meet the minimum standards of habitability. In neither case does a violation arising after the lease term has commenced void the contract, and in neither case does the failure to comply with statutory requirements deprive the landlord of his right to sue for possession for nonpayment of rent. In the instant case, the lapse in licensure occurred because the building changed ownership. This hiatus did not render all of the many tenants' leases illegal and void. In addition, while the deteriorated condition of the apartments represented a breach of the appellee's warranty to maintain the premises in a habitable state, there is no evidence to indicate that conditions in substantial violation of the code existed at the beginning of the tenancies. The trial court in the No. 7332 cases therefore was correct in its judgment that the leases remained valid instruments. *Cf. Brown v. Southall Realty Co., supra.* Moreover, even if the failure to procure the necessary licenses voided the leases *ab initio,* as appellants argue, the landlord nevertheless would be entitled to the reasonable value of the use and enjoyment of the premises, and could maintain an action

for nonpayment of rent.[4] *See William J. Davis, Inc. v. Slade,* D.C.App., 271 A.2d 412, 416 (1970); *Diamond Realty Corp. v. Robinson,* D.C.App., 257 A.2d 492 (1969).

■ We do not think that our holding today in any way defeats the salutary purposes of the licensing system or the housing laws. The primary policy behind these statutory provisions is ensuring the maintenance of satisfactory housing for the urban rental market. Practical realities dictate that a balance must be struck between the tenant's right to a habitable dwelling and the landlord's obvious requirement of a dependable flow of financial resources without which he could neither maintain nor restore the premises to a suitable condition. We therefore refrain from holding that rent may be avoided by a tenant solely because the landlord has failed to obtain certain licenses required by law.

■ To be entitled to remain in possession and yet be relieved of full liability for rent, a tenant must prove that the landlord has transgressed a regulation which substantially and directly affects the habitability of the premises. The requirement of a showing that the violation adversely reflects on the habitability of the premises before the withholding of rent arguably can be justified is warranted by the unique nature of the landlord-tenant relationship. It is the law in this jurisdiction that the duties imposed upon a lessor by the Housing Regulations are implied into housing contracts. *Javins v. First National Realty Corp., supra.* This departure from the common law has been necessary to protect

the valid expectations of tenants that the premises they have leased will provide decent living accommodations throughout the term of the lease. *Id.* at 377, 428 F.2d at 1079. Since the predominant concern is the habitability of the premises, violations of law which are *de minimis* with respect thereto do not represent a breach of the landlord's obligations. *Id.* at 380 n. 63, 428 F.2d at 1082 n. 63. Further, the only duty of the landlord upon which the tenant's basic liability for rent is dependent is the duty to provide safe, habitable housing. *See Winchester Management Corp. v. Staten,* D.C.App., 361 A.2d 187 (Nos. 8157 and 8163, July 14, 1976).

■ The values underlying the regulatory and licensing provisions for rental housing are protected adequately when a tenant is afforded the opportunity to prove housing code violations as evidence of a breach of the landlord's warranty of habitability, thereby defeating or forestalling possessory relief. In the No. 7332 cases, the tenants were granted substantial reductions in their monthly rental obligations proportionate to the gravity of the actual housing code violations. We are not dealing with a situation in which a landlord deliberately has avoided the licensure procedures in an effort to avoid inspections and possible notification of violations. Indeed, both trial judges found that the appellee had undertaken repair work after receiving notice of existing illegal conditions. Under these circumstances, equitable principles require that the tenants be relieved of their legal obligations to pay rent only to the extent that they actually were harm-

---

4. Some jurisdictions have enacted statutes which deprive the landlord of his right to maintain any action to recover possession of premises for which there is no certificate of occupancy. *See, e. g., Dreamy Hollow Apartments Corp. v. Lewis,* 4 Conn.Cir. 355, 232 A.2d 346 (1967); *Herzog v. Thompson,* 50 Misc.2d 488, 270 N.Y.S.2d 469 (1966). The District of Columbia's housing laws are silent on the question of how compliance with the regulations is to be attained, short of criminal prosecution. Without clear legislative direc-

tion we are loath to deny the landlord of a building which has been occupied on a continuing basis his cause of action for nonpayment of rent simply because of the lack of a certificate of occupancy or housing license. Even in those states where such legislation exists, the statutes are strictly construed so as not to extend to the tenant any right beyond those specifically provided. *See, e. g., Wokal v. Sequin,* 167 Misc. 463, 4 N.Y.S.2d 86 (1938).

ed. This was accomplished by the court's order in the No. 7332 cases. However, it was not accomplished in the No. 7331 cases, for in them, despite the evidence of substantial breaches of the housing code, the tenants were denied relief from their contractual rental obligations. Such denial constitutes reversible error. There is no evidence that the violations of the housing code resulted from the tenants' wrongful actions, nor do we find any support for the trial court's vague suggestion that a "rent strike" was directed against appellee for reasons unrelated to the unlawful condition of the premises. Hence we reverse the trial court in No. 7331, and remand for a determination of what portions of the appellants' rental obligations had been suspended by appellee's breaches of the warranty of habitability. We affirm in No. 7332.

*Affirmed in No. 7332; reversed and remanded in No. 7331 for proceedings consistent with this opinion.*