Dave **PERNELL**, Appellant,

v.

**SOUTHALL REALTY**, Appellee.

No. 6022.

District of Columbia Court of Appeals.

Argued May 1, 1972.

Decided Aug. 31, 1972.

Norman C. Barnett, Washington, D. C., for appellant.

Herman Miller, Washington, D. C., for appellee.

Before Reilly, Chief Judge, KERN, Associate Judge, and HOOD, Chief Judge, Retired.

REILLY, Chief Judge:

This appeal by a tenant from a judgment rendered in favor of a landlord in a suit for possession of real property occupied by appellant under a written lease—a statutory proceeding authorized by D.C.Code 1967, § 16–1501—raises the issue of whether a party to such a suit is entitled to a jury trial. For more than a year, trial judges sitting in the Landlord and Tenant Branch of the Superior Court have taken conflicting positions on this matter, but this is the first time the question has been squarely presented to this court.

The case before us began on July 20, 1971 with the filing of a complaint asserting that the tenant was in default of payment for three months' rent in the amount of $375 and accordingly claiming judgment for possession. The complaint omitted any demand for rent in arrears. A summons incorporated in the complaint directed the tenant to appear in court and answer the landlord's suit on August 9, 1971. Such expedited notice in suits brought under § 16–1501 is au-

thorized by another section in the same chapter, § 16–1502, requiring that the summons be served or posted on the premises only seven business days before the date fixed for trial. On the designated date, the tenant filed an answer and demand for jury trial. The answer set forth a set-off in the amount of $389.60 for repairs made by the tenant, and a counterclaim for $75 predicated upon failure of the landlord to maintain the property in compliance with local housing regulations.

The court struck the jury demand and continued the case for trial to August 16, 1971. The tenant failed to appear in court that day, but the trial was held over the objection of his counsel, and judgment for possession entered for the landlord. According to the "Statement of Evidence and Proceedings" the only witness was the lessor. He identified a written lease, received as an exhibit, which required monthly rental payments of $150 and contained a clause under which the tenant agreed to make certain repairs for the sum of $300. He testified that no rental payments had been made since May. In the absence of the tenant, the latter's counsel attempted to prove the setoff, but the witness stated that he had inspected the premises and that none of the work agreed upon had been done by the tenant. Counsel was also unsuccessful in an effort to show any breach of housing regulations. The only evidence proffered was a document (or documents) purporting to be a report of a housing inspector but, as the papers were not authenticated or presented by a witness who could be cross-examined on the subject, the court rejected this material.

It is appellant's contention that the court below erred in denying his timely demand for jury trial, asserting that (1) the seventh amendment to the United States Constitution [1] guarantees the right of trial by jury in all cases brought under § 16–1501, and (2) in any event, he was entitled to a jury trial in this case by virtue of the counterclaim and setoff specified in his answer.

This court has never addressed itself to the problem of the constitutional right to trial by jury in a suit for summary possession under § 16–1501, where back rent is not claimed nor title drawn into issue by the pleadings. For years the matter was academic, because until repealed by the District of Columbia Court Reform and Criminal Procedure Act of 1970,[2] the right to a jury trial "[w]hen the amount in controversy in a civil action . . . exceeds $20, and in all actions for the recovery of possession of real property," was expressly provided by another section of our code, § 13–702.[3] Congress did not make clear what it intended by the repeal of this section.[4] Undoubtedly the proponents of the new act deemed it unnecessary to include specific constitutional rights in a statute dealing with civil procedure, but irrespective of intent it is clear that, if the seventh amendment itself guarantees a right to demand a jury in a statutory proceeding for summary possession, the trial court erred in denying this right.

■ It is settled that the seventh amendment neither enlarged nor restricted the right to jury trial, but preserves such right as it existed in England in 1791, in "suits at common law." Parsons v. Bedford, Breed-

1. U.S.Const. amend. VII:
 In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

2. Act of July 29, 1970, Pub.L. No. 91–358, 84 Stat. 473.

3. Kass v. Baskin, 82 U.S.App.D.C. 385, 164 F.2d 513 (1947), held that such section was permissive rather than mandatory, conferring a right to jury trial upon demand, but not requiring such trial. At that time, the section was codified as D.C. Code 1940, § 11–715.

4. See H.R.Rep.No. 907, 91st Cong., 2d Sess. 164 (1970), and discussion in Hair v. Cooper, Super.Ct.D.C. (L & T No. 62963–71, decided August 23, 1971; reported in part in 99 D.W.L.R. 1569).

love & Robeson, 28 U.S. (3 Pet.) 433, 7 L.Ed. 732 (1830).[5] Our first inquiry then is whether this action or its equivalent existed at common law in England in 1791.

Appellant argues that an action under § 16–1501 is equivalent to ejectment, which was a common law action triable by jury. Whitehead v. Shattuck, 138 U.S. 146, 11 S.Ct. 276, 34 L.Ed. 873 (1891). The short answer to this argument, however, is that in a separate section in the same title of our code Congress has provided another remedial action for nonpayment of rent, officially captioned "Ejectment."[6] The accompanying annotation sets out a British statute of the year 1731 (Acts of 4 Geo. 2, c. 28, §§ 2–4), from which this particular section was derived. Under § 16–1124 there is a cause of action if (1) one-half year's rent is in arrears, and (2) there is a deficiency "of goods and chattels whereon to distrain for the satisfaction of the rent due." The section also provides for (1) an application for equitable relief from a judgment up to six months after execution thereon by tender of the back rent, and if granted, (2) a setoff of the sum the landlord gained or should have gained from the property during the time the tenant was out of possession against the rent accruing after judgment was rendered.

 The archaic limitations upon the cause of action defined in § 16–1124 and the cumbersome procedure contemplated thereafter constitute such a marked contrast to the expedited character of the § 16–1501 proceedings devised by Congress to handle run-of-the-mill landlord-tenant controversies that any resemblance between

suits for summary possession and common law ejectment actions is extremely superficial. We agree that the mere incorporation into a statute of a common law form of action does not deprive the parties to such action of any constitutional rights incidental thereto. Since § 16–1124 preserves the major characteristics of the old common law ejectment action, it may well be that this section falls within the scope of the seventh amendment.[7] It seems equally apparent that the kind of remedial action defined in §§ 16–1501, 1502, and 1503 was not known to the common law.

Another distinction is that an action under § 16–1501 normally does not try title. When the issue of title intrudes into the action, it is discontinued and, pursuant to a rule of the Superior Court, transferred from the Landlord and Tenant Branch to the Civil Division "for trial on an expedited basis."[8] Appellant argues that the change of forum incident to a plea of title does not change the nature of the proceedings, and we would agree. Nevertheless, actions in which title is in issue constitute a special category under the statute.[9] That situation was not before the lower court in the instant case, and we do not deal with it on this appeal.

Appellant asserts, however, that the "purpose of ejectment at common law has always been primarily to determine the question of the right to possession, and secondarily the question of title, if that question be raised . . . ." Shapiro v. Christopher, 90 U.S.App.D.C. 114, 122, 195 F.2d 785, 793 (1952).[10] We agree on the limited ground that the purpose of determining title

5. *See also* Baltimore & C. Lime v. Redman, 295 U.S. 654, 657, 55 S.Ct. 890, 79 L.Ed. 1636 (1935).

6. D.C.Code 1967, § 16–1124.

7. Neither the annotation to the official code nor the District of Columbia Code Encyclopedia lists appellate cases construing this section.

8. Super. Ct. L & T Rule 5(c). Prior to the Court Reform and Criminal Pro-

cedure Act, D.C.Code 1967, § 16–1504 required transfer to the federal District Court where all issues, including title, were to be tried.

9. No question of title is concluded between the parties in an action under § 16–1501, where title is not pleaded by the defendant. D.C.Code 1967, § 16–1505 (Supp. V, 1972).

10. *Contra*, Brown v. Slater, 23 App.D.C. 51 (1904).

is to gain the right to use the property. But it is not only the result but the nature of the issue tried to which we must look in deciding whether the seventh amendment will apply to such actions. Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). Late 18th century English law may have, in our view, placed too great an emphasis upon "title," but if we are to accord proper effect to the seventh amendment, we must try to see the issues as they were perceived at that time.

Whether an issue of title was considered always present, if only conceptually, in actions in ejectment in England in 1791 is a question which cannot be answered with certainty.[11] It is clear, however, that some of the most illustrious figures in our legal tradition were of that opinion. Thus Lord Mansfield in Cottingham v. King, 1 Burr. 621 (K.B.1758), said that in the fictitious action of ejectment, the plaintiff may take only what he has shown title to. In Atkyns v. Horde, 1 Burr. 60, 119 (K.B.1757), Lord Mansfield stated that "[a]n ejectment is a possessory remedy . . . [and] [e]very plaintiff in ejectment must shew a right of possession *as well as of property*." (Emphasis supplied.) And in McArthur v. Porter, 31 U.S. (6 Pet.) 205, 211, 8 L.Ed. 371 (1832), Mr. Justice Story observed "[t]hat the action of ejectment is a fictitious action, and is moulded by courts to subserve the purposes of justice in a manner peculiar to itself, is admitted, but its professed object is to try the titles of the parties . . . ."

Moreover, while the Supreme Court has recognized that at common law one with a right to possession could maintain an action for ejectment, it also has pointed out that statutory proceedings for summary repossession are plainly distinguishable from the common law action. In rejecting a constitutional challenge to an Oregon statute very similar to ours, the Court in Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed. 2d 36 (1972), held that a state may validly single out possessory disputes between landlord and tenant for especially prompt judicial settlement without violating equal protection. Discussing one historic difference between the statutory remedy and ejectment, Mr. Justice White, in his majority opinion, observed (*id.* 405 U.S. at 71, 92 S.Ct. at 873):

> . . . the common law also permitted the landlord to "enter and expel the tenant by force, without being liable to an action of tort for damages, either for his entry upon the premises, or for an assault in expelling the tenant, providing he uses no more force than is necessary and do[es] no wanton damage." Smith v. Reeder, 21 Or. 541, 546, 28 P. 890, 891 (1892). The landlord-tenant relationship was one of the few areas where the right to self-help was recognized by the common law of most States, and the implementation of this right has been fraught with "violence and quarrels and bloodshed." Entelman v. Hagood, 95 Ga. 390, 392, 22 S.E. 545 (1895). An alternative legal remedy to prevent such breaches of the peace has appeared to be an overriding necessity to many legislators and judges. (Footnote omitted.)

While *Normet* did not deal with the jury issue, state courts, also distinguishing between writs of ejectment and summary statutory proceedings, have held that litigants in such proceedings are not entitled to jury trials, notwithstanding provisions in their respective state constitutions incorporating the seventh amendment.[12] Reece

---

11. *See* E. Henderson, The Background of the Seventh Amendment, 80 Harv.L.Rev. 289 (1966). A headnote to this article states that after careful study of all the available material, English and American, the author found "that the amendment was not intended to codify a rigid form of jury practice—that indeed there was no consistent practice in 1790 to be codified." At the time of publication, the author was Curator of the Treasure Room, Harvard Law Library.

12. In some states these statutory suits for repossession of real estate are called actions of eviction, actions of forcible entry, or actions of unlawful detainer.

v. Montano, 48 N.M. 1, 144 P.2d 461 (1943); Wilder v. Kneeland, 94 N.H. 185, 49 A.2d 506 (1946); Frazee v. Bratton, 26 S.C. 348, 2 S.E. 125 (1887). Where formal landlord-tenant relationship is not shown, the doctrine that ejectment (presumably with a right to jury trial) rather than a summary proceeding is the proper remedy was recognized by state courts at an early period. *See, e. g.,* Cassidy v. Clark, 62 Ga. 412 (1879); Whitney v. Dart, 117 Mass. 153 (1875).

Appellant also urges that any distinction between summary possession as defined in our code and ejectment is meaningless as both actions historically were triable by jury. By adopting Judge Braman's scholarly opinion in Urciolo v. Evans,[13] appellant contends that the progenitors of § 16–1501 are the writ of assize and the writ of entry. The histories of these writs may be traced in England to the early Plantagenet period, thus long antedating the common law action of ejectment to which reference has been made—a development of the later 17th century.[14]

In view of the lengthy account in the *Urciolo* opinion of the evolution of these writs into a proceeding closely resembling the summary remedial landlord-tenant action involved here, it is unnecessary to summarize the historic materials which led Judge Braman to the conclusion that cognate actions flourished in the colony of Maryland in the 18th century, and that a Maryland statute enacted in 1793 before the District of Columbia was created bears the imprint of the writ of assize.[15] This statute in turn was incorporated into the law of this jurisdiction by reason of the Organic Act of February 27, 1801, which made all laws then in force in Maryland applicable to the District of Columbia. For 63 years the Maryland adaptation of the writ of assize was the operative remedy here for landlords suing for summary repossession, except that the justices of the peace before whom the jurors and litigants were summoned to appear were District rather than county officials. In 1864 Congress enacted for the District of Columbia a new landlord-tenant repossession statute[16] (Act of July 4, 1864, ch. 243, 13 Stat. 383; subsequently codified as §§ 680–691, Rev.Stat.D.C.), which provided—*inter alia*—the losing party at the justice of the peace level with a right of trial *de novo* by jury in the Su-

13. Super.Ct.D.C. (L & T No. 60495–71, decided Sept. 14, 1971; reported in part in 99 D.W.L.R. 1729).

14. 4 J. Minor, Institutes of Common and Statute Law 439 (3 ed. rev. 1893).

15. Act of Maryland of 1793, ch. 43, 2 W. Kilty, Laws of Maryland (1800). Entitled "An Act to Provide a Summary Mode of Recovering the Possession of Lands and Tenements Holden by Tenants for Years, or at Will, after the Expiration of their Terms", it provided that where the tenant, "after expiration of the term" and notice to quit, refused to remove, then

. . . upon complaint thereof made by the said lessor . . . to any two justices of the peace of the county wherein the lands . . . are situate, and upon due proof made before them, the said justices . . . are hereby authorized and required forthwith to issue their warrant, upon their hands and seals, to the sheriff of the said

county directed, commanding him to summon twelve good and lawful men of his said county, to be and appear on the premises before the said justices, on a day in the said warrant mentioned, which shall be the fourth day after issuing the said warrant; and also at the same time to issue their summons to the tenant . . . in possession, to be served by the said sheriff, that he . . . appear on the day and at the same place in the said warrant mentioned, to show cause, if any he . . . have, why restitution of the possession of said lands . . . should not be forthwith made to such lessor. . . .

16. In Willis v. Eastern Trust & Banking Co., 169 U.S. 295, 18 S.Ct. 347, 42 L.Ed. 752 (1898), it was held that a mortgagee who had begun an action before a justice of the peace was not entitled to maintain process under this statute, his appropriate remedy being ejectment or foreclosure.

preme Court of the District of Columbia.[17] As a result of subsequent revisions and various court reorganization acts, this 1864 act eventually became the summary proceeding now embodied in § 16–1501.

Accordingly, appellant submits that this court should agree with Judge Braman's conclusion that § 13–702, now repealed, was not intended to confer a right which did not previously exist under the seventh amendment, for "an unbroken history of 170 years" in the District of Columbia, "linked to its counterparts of assize and entry" discloses that trial by jury was always the procedure in repossession cases. While we have no reason to take exception to the historical sketch in the *Urciolo* opinion of how summary repossession actions evolved, the thesis that the jury functions known to the writ of assize and eventually to the justice of the peace courts were the kind of jury trials the seventh amendment intended to preserve has one fatal flaw. This very proposition has been rejected by the Supreme Court of the United States, Capital Traction Co. v. Hof, 174 U.S. 1, 19 S.Ct. 580, 43 L.Ed. 873 (1898).

In that case, the Court decided that a statute permitting a litigant in a civil action for damages to claim a jury before a justice of the peace with a right of appeal to the District Supreme Court authorizing a jury trial *de novo* was not in conflict with the requirement of the seventh amendment that "no fact tried by a jury shall be otherwise re-examined, in any court of the United States, than according to the rules of the common law." The Court did so on the ground that a trial by jury before a justice of the peace being

. . . unknown in England or America before the Declaration of Independence, can hardly have been within the contemplation of congress in proposing, or of the people in ratifying, the seventh amendment to the constitution of the United States.[18]

In writing for the majority, Mr. Justice Gray also observed:

"Trial by jury," in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of 12 men before an officer vested with authority to cause them to be summoned and empanelled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of 12 men in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict, if, in his opinion, it is against the law or the evidence. This proposition has been so generally admitted, and so seldom contested, that there has been little occasion for its distinct assertion. . . .[19]

In our view, *Hof* shatters the picture of a continuous history of jury trials protected by the seventh amendment in summary landlord-tenant possession cases since the founding of the District. The Supreme Court's decision in that case makes it clear that until the passage of the 1864 act no right to a jury trial within the contemplation of the Constitution was available to the parties to such actions. Thus, the successor statute to the 1864 act—the section of the code[20] repealed by the Court Reform Act of 1970—cannot be deemed as declarative of seventh amendment rights and therefore mere surplusage on the statute books.

17. Then the trial court of general jurisdiction of the District, with authority to hear cases arising under local as well as federal law.

18. Capital Traction Co. v. Hof, 174 U.S. 1 at 18, 19 S.Ct. at 587.

19. *Id.* at 13, 14, 19 S.Ct. at 585.

20. D.C.Code 1967, § 13–702, referred to earlier in this opinion.

*Hof* is not the only Supreme Court decision indicating that the right to jury trial in summary possession proceedings depends wholly on statute. In Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921), a challenge to the constitutionality of a statute transferring from the trial court to a rent control commission a landlord's right to recover possession, was based on the ground, *inter alia,* that it deprived landlords and tenants of a trial by jury. Mr. Justice Holmes had little difficulty in his majority opinion in disposing of this objection with the observation that

> . . . [i]f the power of the Commission established by the statute to regulate the [landlord-tenant] relation is established . . . this objection amounts to little. To regulate the relationship and [the procedure] to decide the facts affecting it are hardly separable. . . . 256 U.S. 135 at 158, 41 S.Ct. at 460.

Obviously the Court could scarcely have made this observation if the right to jury trial was conferred by the Constitution. Therefore we hold that the repeal of § 13–702, *supra,* deprives the parties in landlord-tenant cases of a right to demand jury trial, if the cause of action is predicated on non-payment of rent or some other breach of the lease, and the only remedy sought is repossession of the rented premises.[21]

There remains for consideration the contention that irrespective of the right of jury trial in suits for possession, a jury trial was required in this case by reason of the counterclaim and setoff affirmatively pleaded in appellant's answer. Appellant relies on Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and Beacon Theatres v. Westover, 359 U.S. 500, 79 S. Ct. 948, 3 L.Ed.2d 988 (1959), which hold that even though the cause of action is equitable in character, defendant is entitled to a jury trial on issues raised by allegations in a complaint or by a counterclaim sounding in law. In our view, appellant's reliance on these decisions is misplaced as the claims enunciated in the answer, upon analysis, do not present issues traditionally associated with common law actions.

In his answer to appellee's complaint, appellant claims $75 back rent paid, based on appellee's failure to maintain the premises in compliance with the District of Columbia Housing Regulations, and $389.60 for repairs made to bring the premises into partial compliance with the housing regulations. Notwithstanding appellant's characterization of the first of these claims as a "counterclaim" and the second as a "set-off," we regard the first as "recoupment" and the second as a "setoff," insofar as they do not exceed the amount of back rent unpaid in contradistinction to a "counterclaim for a money judgment" within the meaning of Rule 5(b) of the Landlord and Tenant Branch of the Superior Court, which provides:

> . . . In actions in this branch for recovery of possession of property in which the basis of recovery is nonpayment of rent or in which there is joined a claim for recovery of rent in arrears, the defendant may assert an equitable defense of recoupment or set-off or a counterclaim for a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises. No other counterclaims, whether based on personal injury or otherwise, may be filed in this branch. This exclusion shall be without prejudice to the prosecution of such claims in other branches of the court.

The original complaint alleged that $375 rent was in default, but another month's rent of $150 had accrued by the time of trial—a total of $525. We view appellant's claims, therefore, as defenses of recoup-

---

21. We are not impressed with the alternative argument that except in rare cases, the right of occupancy of a house or apartment is worth more than $20. This could be said of the rights sought to be adjudicated in the vast majority of suits in equity.

ment and setoff—defenses, it will be noted, that the rule styles as "equitable."

According to appellant, however, despite the descriptive term "equitable" used in the quoted rule, the opinions in Brown v. Southall Realty Company, D.C.App., 237 A.2d 834 (1968), and Javins v. First National Realty Corporation, 138 U.S.App.D.C. 369, 373, 428 F.2d 1071, 1075 (1970), demonstrate that inasmuch as his counterclaim rests on an asserted violation of local housing regulations, it raises an issue of breach of warranty which could only be determined in a court of law. In the *Brown* case, all that this court held was that where it was illegal to rent a house until certain conditions were corrected, an attempt to enforce a lease executed in violation of such administrative order must fail.[22]

It appears that appellant's principal reliance is not upon the *Brown* holding, but upon the statement of the circuit court in *Javins, supra,* to the effect that "leases of urban dwelling units [are to] be interpreted and construed like any other contract."[23] From this premise the court reasoned that the landlord had an implied obligation to maintain the premises in accordance with the housing regulations, and his failure to do so entitled the tenant to a setoff or counterclaim in a suit for possession. The real question, however, is whether the defense thus accorded by *Javins* should be construed

as a legal issue within the doctrine of *Ross, supra,* and therefore triable by jury under the seventh amendment. In our opinion, it should not.

In the first place, it could not be more obvious that a defense to a suit for possession based on an implied warranty of habitability measured by the housing regulations was not an issue tried in any suit at common law in England in 1791. Such a defense was not available in any suit for possession, regardless of the form it took, in England in 1791. It is a creation of 20th century American courts,[24] and is clearly a departure from the common law.[25]

Second, it is also plain that in suggesting that a modern lease be interpreted like a contract the circuit court was not intending any seventh amendment consequences. The opinion recognizes that the contract approach does not deny the possible importance of the fact that land is involved in a transaction, and suggests that the approach of the civil law—a system of law which rarely uses a jury and which has always viewed a lease as a contract—is superior to that of the common law.[26] In fact, the author of the opinion goes so far as to declare that the modern apartment tenant more closely resembles a guest in an inn—for whose eviction the intervention of a jury has never been required—than the

22. Brown v. Southall Realty Co., D.C. App., 237 A.2d 834 (1968), does not stand for the proposition that in an action where possession is the only remedy sought, a later breach of the housing regulations is a valid defense. In that case the tenant having moved from the premises, the issue of occupancy was moot but the appeal was entertained because the judgment finding the amount of rent in arrears would have been res judicata had the landlord then brought an action for the unpaid rent under the doctrine of Bess v. David, D.C.Mun.App., 140 A.2d 316 (1958). Whether or not such judgments now have this legal effect is an open question as a result of limitations upon the doctrine in Atkins v. United States, D.C.App., 283 A.2d 204 (1971),

and the absence of any holding by this court acquiescing in or disagreeing with Tutt v. Doby, 148 U.S.App.D.C. ——, 459 F.2d 1195 (1972), rev'g D.C.App., 265 A.2d 304 (1970).

23. Javins v. First Nat'l Realty Corp., 138 U.S.App.D.C. 369 at 373, 428 F.2d 1071 at 1075 (1970).

24. See Lemle v. Breeden, 51 Hawaii 426, 462 P.2d 470 (1969) ; Reste Realty Corp. v. Cooper, 53 N.J. 444, 251 A.2d 268 (1969) ; see also, Pines v. Perssion, 14 Wis.2d 590, 111 N.W.2d 409 (1961).

25. Javins v. First Nat'l Realty Corp., 138 U.S.App.D.C. 369 at 375–377, 428 F.2d 1071 at 1077–1079.

26. Id. at 373, n. 13, 428 F.2d at 1075 n. 13.

typically agrarian tenant to whom the common law applied.[27]

It should also be observed that whatever right appellant has to plead defenses to a suit seeking only repossession as counterclaims or setoffs predicated on the failure of the landlord to maintain the premises in accordance with housing regulations, rests entirely upon a current rule of the Superior Court and not upon the Constitution.[28] Prior to *Javins*, this rule permitted such defenses only in suits in which the demand for repossession was coupled with a claim for back rent. In its recent *Normet* decision, *supra*, the majority of the Court (Mr. Justice Douglas dissenting) held constitutional a statute restricting the issues in purely possessory actions as to whether the tenant has paid rent and honored the covenants of the lease, thereby barring the tenant from raising such claims as failure to repair in such actions. The Court said that as long as the tenant was not foreclosed from instituting an action of his own to obtain damages or other relief, the statute was valid. The Court observed:[29]

Underlying appellants' claim is the assumption that they are denied due process of law unless Oregon recognizes the failure of the landlord to maintain the premises as an operative defense to the possessory FED action and as an adequate excuse for nonpayment of rent. The Constitution has not federalized the substantive law of landlord-tenant relations, however, and we see nothing to forbid Oregon from treating the undertakings of the tenant and those of the landlord as independent rather than dependent covenants. Likewise, the Constitution does not authorize us to require that the term of an otherwise expired tenancy be extended while the tenant's damage claims against the landlord are litigated. . . . (405 U.S. 56, at 92 S.Ct. 862 at 871)

In light of this opinion, we find no constitutional infirmity in the trial court's ruling in a companion case[30] (and applied here) that Rule 5(b) merely accords an option upon a tenant, and that if he wishes to litigate any counterclaim for damages against a landlord before a jury, he should institute his own action.[31]

While we agree with the observation in the *Urciolo* opinion that a seventh amendment question "cannot be resolved on the basis of caseloads, statistics, or expedients," judges should nevertheless be cautious in attributing to the fathers of the Constitution an intention to impose upon Congress and the courts a rigid system which would nullify efforts to expedite judicial disposition of landlord-tenant controversies.

It is unlikely that a construction of the *Javins* defense making a jury trial demandable whenever the defense is raised, will

---

27. *Id.* at 375 n. 33, 428 F.2d at 1077 n. 33.

28. Super.Ct. L & T Rule 5(b).

29. The majority opinion regarded this question as having been settled by two prior cases holding it " . . . permissible to segregate an action for possession of property from other actions arising out of the same factual situation which may assert valid legal or equitable defenses or counterclaims." Grant Timber & Mfg. Co. v. Gray, 236 U.S. 133, 35 S.Ct. 279, 59 L.Ed. 501 (1915) ; Bianchi v. Morales, 262 U.S. 170, 43 S.Ct. 526, 67 L.Ed. 928 (1923).

30. Silvey v. Snyder, Super.Ct.D.C. (L & T No. 61505–71, decided August 23, 1971; reported in part in 99 D.W.L.R. 1569).

31. Appellant also assigns as error the trial court's refusal to stay the writ of restitution because of some undertaking by the Department of Human Resources, contending that this amounted to an adequate tender of payment, Trans-Lux Radio City Corp. v. Service Parking Corp., D.C.Mun.App., 54 A.2d 144 (1947). There is nothing in the record to show the terms of such undertaking, however, except a promise to make such payment in the future. Under such circumstances, we cannot hold that the Trans-Lux rule was satisfied.

improve the system of justice in this jurisdiction. Local building, housing, and safety regulations are complex, and issues of fact thereunder are not particularly suited to jury determination. *See* Williams v. Auerbach, D.C.App., 285 A.2d 701, 703–704 (1972). Of broader significance is the effect of jury trials on already congested courts which has led a number of commentators to suggest the abolition of the jury system entirely where not constitutionally required.[32]

Noting the possible impact of the *Javins* opinion upon the already staggering volume of landlord-tenant litigation in the Superior Court; the Chief Judge of that tribunal has raised the question of whether the establishment of a special administrative agency is not necessary if such controversies are to be decided promptly.[33] It would be ironic if an overbroad interpretation of the seventh amendment should force us to abandon a system of law derived, although now somewhat distantly, from the common law in favor of an administrative agency which escapes the stricture of the amendment because "[t]he proceeding is one unknown to the common law." National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 48, 57 S.Ct. 615, 629, 81 L.Ed. 893 (1937). *See also* Block v. Hirsch, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921).

We conclude that in a suit for possession, a defense based on the housing regulations raises no issue as to which the seventh amendment preserves the right to a trial by jury.

Affirmed.

32. *See, e. g.,* J. Frank, Courts on Trial (1949) ; E. Henderson, *supra* n. 11; "Abolition of the Civil Jury : Proposed Alternatives," 15 DePaul L.Rev. 416 (1966) ; D. Karlen, "Can a State Abolish the Civil Jury?", 1965 Wisc.L.Rev. 103 ; L. Sarpy, "Civil Juries, Their Decline and Eventual Fall", 11 Loyola L.Rev. 243 (1962).

33. *See* H. Greene, "A Proposal for the Establishment of a District of Columbia Landlord-Tenant Agency", 38 D.C.Bar.J., Nos. 1–6 at 25 (1971).