**Wilbur JOHNSON, Appellant,**

v.

**EDGEWOOD MANAGEMENT CORP., Appellee.**

No. 85–697.

District of Columbia Court of Appeals.

Argued May 8, 1986.

Decided July 10, 1986.

Howard L. Nelson, Washington, D.C., for appellant.

James W. Greene and Sidney Bresler, Washington, D.C., for appellee.

Before NEWMAN, TERRY and ROGERS, Associate Judges.

ROGERS, Associate Judge:

Appellant Wilbur Johnson (Johnson) appeals from the trial court's decision that he was lawfully evicted from his residence pursuant to a judgment of possession entered in favor of appellee Edgewood Management Corporation (Edgewood). *Edgewood Management Corporation v.*

---

*Johnson*, L & T No. 48544–82 (October 27, 1982). He contends that the eviction, which was based on a failure to pay an $11 post-judgment cost incurred by Edgewood, was unlawful because Edgewood never sought a court award for the cost or to have the cost taxed by the clerk of the court. We agree and hold that the eviction was unlawful because Johnson's tender of the rent due and court-approved costs was adequate to stay the execution of the judgment.[1] Johnson also contends that the motions judge abused his discretion in failing to award sanctions and costs against Edgewood for the failure of its managing agent to attend three depositions; we find no abuse of discretion.

## I.

Landlord Edgewood filed a complaint for possession against its tenant Johnson claiming that the rent owed on his unit was in arrears by $576.00 as of October 31, 1982. Judge Morrison found that Edgewood was entitled to a judgment of possession, and instructed Johnson that in order to exercise his right of redemption and avoid eviction under *Trans-Lux Radio City Corporation v. Service Parking Corporation*, 54 A.2d 144 (D.C.1947), he would be required to pay "$576.00 plus $11.00 in court costs, which adds up to $587.00." The judge told Johnson that he had until the time the U.S. Marshals came to evict him to pay the full amount of money due so that if he delayed past October 31, he would also have to pay the November rent. Johnson applied to the D.C. Department of Human Services (DHS) for emergency rental assistance, and on or about November 22, 1982, he tendered to Edgewood a commitment letter from DHS promising to make payment of $587.00, and $320.00 in cash for what Johnson claims was the November rent.[2]

Because Johnson had not paid $587.00 prior to November 1, 1982, Edgewood obtained a writ of restitution on the judgment of possession in order to evict him, and incurred an additional expense of $11.00 in obtaining the writ of restitution.[3] By letter dated December 2, 1982, Edgewood informed Johnson that

> As you are aware, a bench trial was held on October 27, 1982 before the Honorable Truman Morrison, III. On October 27, 1982, Judge Morrison ruled that you owed 587 dollars in rent and an 11 [dollar] writ filing fee in order to be current in rent and associated charges up to October 31, 1982.

Edgewood argues that Johnson was therefore warned that he had a balance due and owing of $6.00 and that if this sum were not paid within forty-eight hours, Edgewood would execute the writ of restitution. On December 10, 1982, Johnson was evicted for nonpayment of $6.00.

Johnson filed a lawsuit for wrongful eviction on January 21, 1983. His theory of liability was that he had paid Edgewood all the money required to redeem his tenancy prior to the eviction, and that his eviction was wrongful because Edgewood had improperly required him to pay writ-of-restitution costs without seeking an award of these costs from the court or a taxing of these costs by the clerk of the court.

Judge Walton initially granted judgment on liability to Johnson, reasoning that "the court must be apprised of which costs the party is seeking to recover and the court

1. In view of our disposition, we do not reach Johnson's other contention that he should have been permitted to present evidence of estoppel to the jury regardless of whether he had pleaded estoppel in his complaint and that if such an affirmative plea was required, he should have been permitted to amend his complaint.

2. According to Edgewood, the rent due for November was $315 and the overpayment of $5 was an acknowledgement by Johnson that he

owed an additional $11 in filing fees. However, at the possession hearing Sheila Baker, recertification officer for Edgewood, testified that Johnson's rent had been raised to $316.00 as of September, 1982, and calculated the $576 deficiency based on that sum.

3. The fee for the writ appears in Super.Ct.Civ.R. 202, which is applicable to landlord-tenant proceedings, Super.Ct. L & T R. 2.

must then determine whether such costs are taxable, before the losing party becomes obligated to pay them." Since Edgewood did not request the $11.00 writ filing fee, and thus the court could not make a determination on them, the judge ruled that the costs were not a part of the amount Johnson had to pay to redeem his tenancy. On Edgewood's motion for reconsideration and clarification, however, Judge Walton vacated his original order and held that D.C. Code § 16–1503 (1981), which authorizes "judgment and execution for the possession in [Edgewood's] favor with costs ...," entitled Edgewood to execute the judgment and to be reimbursed for all necessary costs in so doing.

Under *Trans-Lux Radio City Corporation v. Service Parking Corporation, supra,* 54 A.2d at 147, a tenant is given the right to redeem his tenancy after a judgment of possession has been entered against him. To exercise the right of redemption, the tenant must tender "the rent due with interest and costs." *Id.* at 147 (quoting *Sheets v. Selden,* 74 U.S. (7 Wall.) 416, 421, 19 L.Ed. 166 (1869)). This court directed the trial court "to specifically find the amount of rent in arrears ... in order that the tenant may know what amount he is required to pay, and the landlord what amount he is entitled to receive in order to stay enforcement." *Id.* at 146–47. The parties do not dispute the existence or applicability of the right of redemption to this situation. They disagree only as to the costs which may be properly included in the *Trans-Lux* figure.

D.C. Code § 16–1503 (1981) provides in relevant part that "[w]hen, upon a trial in a proceeding pursuant to this chapter, it appears that the plaintiff is entitled to the possession of the premises, judgment and execution for the possession shall be awarded in his favor, with costs...." Super.Ct. L & T R. 15 further provides:

> Upon entry of judgment, the prevailing party shall be awarded as a matter of course all taxable costs in the action including a maximum fee of $3 to cover the costs incurred for service by a special process server. Other costs may, in the Court's discretion, be awarded to the prevailing party or any other party, as appropriate, and costs may be awarded so as to discourage the filing of frivolous, vexatious or premature actions or defenses.

■ The statute clearly contemplates reimbursement to the successful party for costs incurred by that party. Moreover, *Trans-Lux* states that " 'all arrears of rent, interest and costs' must be tendered [and that] all arrears must necessarily refer to the time of tender, whether the tender be made before judgment, at time of judgment or after judgment." *Trans-Lux, supra,* 54 A.2d at 148. Since the authority of a court to assess a particular item as costs arises from statute, court rule, custom, practice and usage, *Robinson v. Howard University,* 455 A.2d 1363, 1368–69 (D.C.1983), the cost of the writ may properly be regarded as "taxable." However, merely because a cost could be awarded, or would be automatically awarded upon request by the court, it does not follow that a prevailing party can unilaterally calculate its postjudgment expenditures and demand such payment from the party against whom costs are assessed as part of the *Trans-Lux* payment.

Super.Ct.Civ.R. 54(d), which applies to proceedings in landlord tenant court, Super.Ct. L & T R. 2, provides:

> Except when express provision therefor is made either in an applicable statute or in these Rules, costs shall be allowed as of course to the prevailing party unless the Court otherwise directs, but costs against the United States, the District of Columbia, or officers and agencies of either shall be imposed only to the extent permitted by law. Costs may be taxed by the Clerk on 1 day's notice. On motion served within 5 days thereafter, the action of the Clerk may be reviewed by the Court.

The procedure for taxing costs followed in District of Columbia, and in federal

courts, entails the filing of a bill of costs with the court clerk after the entry of judgment. The clerk then notifies the opposing party one day before the clerk may act upon the information presented by the prevailing party and assesses the taxable costs. After the costs have been fixed by the clerk, the opposing party may file a motion within five days for judicial review of the clerk's action. *See* 10 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2679 (2d ed.1983); *Bennett v. Kiggins*, 391 A.2d 236, 238 (D.C.1978) (per curiam), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 39 (1979); *see also Robinson v. Howard University*, 455 A.2d 1363, 1370 (D.C.1983). This procedure was not followed in this case. Although Edgewood asserts that the charge for issuance of the writ was taxed and awarded by the clerk on November 16, 1982, there is no verification for this in the record, and Edgewood states that it obtained the writ of restitution on November 16, 1982. Given the one-day notice requirement of Rule 54(d), it would not have been proper to obtain the writ and tax the cost on the same day.[4]

Moreover, in its communication to Johnson on December 2, 1982, Edgewood misrepresented Judge Morrison's order of October 27, 1982, by informing Johnson that he owed $587 plus $11 in writ fees. In fact, Judge Morrison had stated the amount due was $576 plus $11 in court costs, and that if this amount was not paid by October 31, 1982, Johnson would be required to tender the November rent as well as redeem the tenancy. Johnson was entitled to rely on Judge Morrison's explicit

statement of the amount of his obligation to Edgewood. To collect the filing fee for the writ of restitution, Edgewood could have returned to court pursuant to Rule 54(d) and thereby insured that Johnson received clear and accurate notice of his obligation. Without taking this step, or otherwise obtaining court approval of the writ cost,[5] the amount required for an adequate *Trans-Lux* tender remained $587 in addition to November's rent. Since this amount was tendered and accepted on November 22, 1982, the eviction on December 10, 1982 was unlawful.

## II.

Johnson also contends that Judge Murphy abused his discretion in refusing to impose sanctions against Edgewood for what Johnson characterizes as "the outrageous conduct of its managing agent in willfully failing to appear for three depositions." The decision to impose sanctions under Super.Ct.Civ.R. 37(b) is entrusted to the discretion of the trial court and will be reversed only for an abuse of discretion. *Vernell v. Gould*, 495 A.2d 306, 311 (D.C. 1985); *Himmelfarb v. Greenspoon*, 411 A.2d 979, 982 (D.C.1980). We find none.

Edgewood's former managing agent, Frank Himmelfarb, executed the writ of restitution for Johnson's eviction and accompanied the United States Marshal to carry out the eviction. Johnson sought to ascertain from Himmelfarb's testimony whether Edgewood's decision to evict was willful as well as unlawful.[6] Himmelfarb failed to appear at two scheduled depositions (September 8 and October 14, 1983),[7]

---

**4.** Counsel conceded at oral argument that Edgewood had not sought taxation of the writ costs but had only applied for and received the writ from the clerk.

**5.** The Landlord & Tenant Rules Committee of the District of Columbia Superior Court may wish to address the alternative methods by which such costs could be awarded.

**6.** Himmelfarb had been shot by a tenant prior to Johnson's eviction. Johnson sought to discover whether the circumstances surrounding

the shooting had affected Himmelfarb's attitude toward tenants generally, and had motivated his decision to evict Johnson.

**7.** Johnson acknowledged that Himmelfarb had called him the day before the first scheduled deposition on September 8, 1984 and told him that he would not appear on September 8, a religious holiday, or on any other date. Johnson also acknowledged that he received a letter from Edgewood's counsel on October 14, 1983 stating they would be unable to appear at the deposition scheduled for October 17, 1983.

and left a third deposition (October 7, 1983) after waiting 45 minutes for the court reporter who was delayed in traffic.

Johnson then filed a motion for sanctions against Edgewood. Judge Murphy ordered Himmelfarb to appear for another deposition. Himmelfarb did appear, but evaded most questions and refused to answer others. Ultimately, he ended the deposition after being asked about his problems in entering office buildings. Judge Murphy denied Johnson's subsequent motion for sanctions on the condition that "the deposition of Franklin N. Himmelfarb will be reconvened within 45 days at a time and date to be agreed on by counsel." The judge commented that it appeared Johnson's counsel was "bearing in on a particular quirk or phobia that [Himmelfarb] has because of his situation to the point of harassment. Now he has to answer certain relevant questions, [but] it appears to me you're badgering him, and he isn't helping the situation by not being cooperative." Therefore, Johnson was told not to ask personal questions about which he knew Himmelfarb was sensitive unless they were relevant. The deposition was reconvened on June 20, 1984. On appeal Edgewood does not disagree that Himmelfarb was "an admittedly sometimes disagreeable" individual, and it is not unfair to characterize him as "uncooperative."

■ Judge Murphy's order conditioning the denial of sanctions on Himmelfarb's appearance at a deposition within 45 days cannot be said to be an abuse of discretion. The deposition was taken on June 20, 1984. Johnson has not demonstrated any prejudice by virtue of the rescheduled depositions. In two instances he had advance notice of Himmelfarb's nonappearance, and in the third it was Johnson's court reporter who failed to appear. Also, Himmelfarb's lack of cooperation was due in part, according to Judge Murphy, to Johnson's counsel's harassment.

Accordingly, we affirm the judgment denying sanctions under Rule 37(b), and re-

verse the judgment of eviction and remand the case.

*Affirmed in part, reversed in part, and remanded.*