**Mabel GAUSE, Appellant,**

v.

**C.T. MANAGEMENT, INC., Appellee.**

**No. 92–CV–1291.**

District of Columbia Court of Appeals.

Argued Nov. 17, 1993.
Decided Feb. 17, 1994.
As Amended March 14, 1994.

---

H.A. Cramer, Neighborhood Legal Services Program, with whom Lynn E. Cunningham and Randal A. Minor, Neighborhood Legal Services Program, were on the brief, for appellant.

Gary G. Everngam, for appellee.

Before TERRY, KING, and SULLIVAN, Associate Judges.

KING, Associate Judge:

Appellant Mabel Gause ("the tenant") challenges orders of the trial court, sitting in the Landlord and Tenant Branch, denying her motion to be restored to possession and her motion for reconsideration. She contends that delivery to appellee C.T. Management, Inc. ("the landlord") of a Department of Human Services' ("DHS") letter confirming an Emergency Assistance Services ("EAS") payment constitutes sufficient tender for purposes of redeeming possession of her apartment under the *Trans–Lux* [1] doctrine. We disagree and affirm.

1. *Trans–Lux Radio City Corp. v. Service Parking Corp.*, 54 A.2d 144 (D.C.1947).

## I.

On June 1, 1992, the landlord filed a complaint for a judgment of possession of an apartment leased to the tenant. After a hearing on the complaint, the parties executed a Form 4 consent judgment praecipe, and execution on the judgment for possession was stayed.[2] The parties agreed in the praecipe that the balance of the March rent would be paid on July 1, 1992; the July rent would be paid on July 16, 1992; and the rents for April, May, and June would be paid on July 17, 1992. The parties specifically provided in the praecipe that although the tenant would seek financial aid through Emergency Assistance Services for the July 17, 1992, payment, the tenant "understands that she is primarily responsible for payment of rent."

The tenant applied for Emergency Assistance Services for the March, June, and July rents, and DHS approved a $1,116.90 payment on July 10, 1992. DHS mailed a check in that amount to the landlord on July 15, 1992. The landlord, however, never received the check, nor was it ever cashed or returned to DHS. When the tenant otherwise failed to make the July 1 and 17, 1992, payments, the landlord filed an application for termination of stay, and after the tenant failed to appear for the hearing on that application, the stay was vacated. Thereafter, the landlord filed another application for termination of stay based on the tenant's failure to make the July 16, 1992, payment. On August 28, 1992, a hearing was held on the latter application, the tenant again failed to appear, and a writ of restitution was issued. On September 1, 1992, both parties appeared for a hearing on the tenant's request to stay the writ of restitution. That request was denied by Judge John Suda, and the writ remained in force, i.e., it was a "live" writ that could be executed.

On September 9, 1992, DHS reauthorized the $1,116.90 payment, and a check in that amount was received by the landlord on September 14, 1992, leaving a balance owed of $1,723.98. The tenant had requested, on September 8, 1992, additional emergency assistance from DHS in the amount of $511.98, with the remaining $1,212.00 due to be paid by the tenant from her own resources. On the morning of September 15, 1992, the tenant delivered, to the property manager's office, money orders totalling $1,212.00. The tenant received a receipt for the $1,212.00 payment from a clerk in the office, and the space on the receipt form for "balance due" was left blank. The tenant then delivered an Emergency Assistance Services letter, confirming authorization of a $511.98 payment, to Oscar McDonald, the assistant property manager, who made a copy of the confirmation letter and returned the original to the tenant. McDonald, however, told the tenant that the landlord had not received the $511.98 payment, the landlord would not accept the confirmation letter, and the tenant "need[ed] to call the worker at EAS or something because the money is not here and I'm not authorized to stop any eviction." The tenant then left the office.

When the tenant returned home that afternoon, she found that members of the United States Marshals service had arrived and the eviction of her apartment was underway. She immediately called her attorney and informed him of that development, and counsel, believing that the eviction was still in progress, appeared in court and requested an emergency stay, which was granted by Judge Gladys Kessler. When Judge Kessler was later informed by the United States Marshals service that the eviction had been completed prior to the issuance of the stay, she vacated the order granting the emergency stay and reissued the writ of restitution. The tenant then orally moved to set aside the eviction. Observing that such an order was not appropriate, Judge Kessler denied the request and advised counsel to file a written motion. Those actions took place in the Landlord and Tenant courtroom with the tenant's attorney present; however, the rec-

---

2. Form 4 contains the following notice:
ALL PAYMENTS, WHETHER TO THE CLERK OF THE SUPERIOR COURT OR TO THE LANDLORD, SHOULD BE MADE PERSONALLY TO INSURE RECEIPT AND MUST BE BY CASH, MONEY ORDER OR CERTIFIED CHECK. FAILURE TO MAKE THE PAYMENT AGREED TO MAY RESULT IN YOUR EVICTION.

ord does not indicate whether the landlord or counsel representing the landlord were present.

On September 17, 1992, the tenant filed a written motion "to restore her to possession of her apartment," contending the confirmation letter was sufficient tender to redeem under *Trans–Lux*. After a hearing on September 21, 1992, Judge Colleen Kollar–Kotelly denied the motion, ruling that the tenant's tender of the confirmation letter authorizing payment for $511.98 did not entitle her to redeem the tenancy. The judge found that "[t]here is no written or verbal agreement that the landlord would accept a letter of confirmation as opposed to a check from EAS as far as I can see in any of the pleadings that were filed." Based on that finding, Judge Kollar–Kotelly concluded:

> It seems to me a confirmation letter is a promise to pay in the future; it's not a check, it's not a money order. . . .

> While a confirmation letter, granted, it's more than just someone promising you to pay to the extent that it is supposed to be the government, but I have had one instance where a confirmation letter was cancelled because additional information came in. So it is a promise to pay in the future, and ... I don't see any basis, frankly, for me as a trial court reading all

these cases to conclude that that's sufficient.

■■■■ On October 8, 1992, the tenant filed a "motion to reconsider" the denial of the motion to restore possession. The motion was based on newly discovered evidence that consisted of two affidavits of DHS employees attesting to this landlord's long-standing practice of accepting confirmation letters for purposes of redemption under *Trans–Lux*. On October 16, 1992, Judge Cheryl M. Long denied the motion, concluding that although there was evidence that the landlord had on occasion allowed confirmation letters, the evidence was inconclusive that the landlord had a policy of accepting the tender of confirmation letters for purposes of redemption. Moreover, the judge credited McDonald's testimony that he informed the tenant that the landlord would not accept the confirmation letter submitted on September 15, as payment for the balance owed, and that there was nothing he could do to stop an eviction. Judge Long concluded that "in the absence of some guidance from a higher authority, or some mandate from a higher authority, this Court is certainly reluctant to preempt the choice of the landlord to accept alternatives to cash, and that's what this case is really all about." The tenant noted an appeal on October 21, 1993.[3]

3. In our view, Judge Kessler's denial, on September 15, 1992, of the oral motion to set aside the eviction was not a final order. *See* D.C.Code § 11–721(a)(1) (1989). That action by the trial court, which so far as the record reveals occurred outside of the presence of the landlord, did not address the merits of the tenant's claim. *See Hagner Management Corp. v. Lawson*, 534 A.2d 343, 344 (D.C.1987) (" 'A final order must dispose of the entire case on the merits and leave nothing remaining but execution on the judgment.' ") (quoting *Dameron v. Capitol House Assocs. Ltd. Partnership*, 431 A.2d 580, 585 (D.C. 1981) (citation omitted). The final order for purposes of appeal was Judge Kollar–Kotelly's denial, after written submissions from both parties were filed, of the motion to restore possession. Further, the tenant's motion for reconsideration, which was denied by Judge Long, is properly regarded as a Super.Ct.Civ.R. 60(b) motion for relief from judgment based on newly discovered evidence. Such a motion does not toll the time for noting an appeal. *See Smith v. Canada*, 305 A.2d 521, 522 (D.C.1973). The tenant, however, filed the notice of appeal within thirty days after entry of Judge Kollar–Kotelly's denial of the motion to be restored to possession.

*See* D.C.App.R. 4(a)(1). This court, therefore, has jurisdiction to review both Judge Kollar–Kotelly's order and Judge Long's order denying the motion for reconsideration. We review Judge Kollar–Kotelly's order as we would any final order on the merits. *See Hutchinson Bros. Excavating Co. v. District of Columbia*, 511 A.2d 3, 6 (D.C.1986) (citation omitted); D.C.Code § 17–305(a) (1989) ("the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it"). We review the denial of a Rule 60(b) motion, however, for abuse of discretion. *See Wallace v. Warehouse Employees Union No. 730*, 482 A.2d 801, 803 n. 5 (D.C. 1984) (citation omitted); *see also Clement v. District of Columbia Dep't of Human Servs.*, 629 A.2d 1215, 1219 (D.C.1993) (relief pursuant to Rule 60(b) is granted only in "exceptional circumstances" as a departure from the rule of "finality of judgments") (citations omitted); *Forgotson v. Shea*, 491 A.2d 523, 528 (D.C.1985) ("where reconsideration is sought on the basis of 'newly discovered evidence,' the movant must demonstrate it could not reasonably have been discovered in advance of trial and would likely

## II.

■ The tenant contends that her delivery of the Emergency Assistance Services confirmation letter, together with the other payments, was sufficient tender entitling her to redemption.[4] It is not disputed that if the confirmation letter had been an acceptable tender, then the tenant would have provided the landlord with sufficient funds to cover the overdue rent and court costs. The issue before us, therefore, is whether the tenant's delivery of the confirmation letter to the landlord constituted sufficient tender for purposes of redeeming the tenancy.

In *Trans–Lux*, this court held that in order to avoid forfeiture of a lease for nonpayment of rent, the tenant must tender to the landlord all the rent due, with interest and costs. *Trans–Lux, supra,* note 1, 54 A.2d at 146. The *Trans–Lux* court explained that:

> [t]ender is made as a basis for staying enforcement of the judgment and if the tenant is either unwilling or unable to pay all that is justly due the landlord at the time of tender there is no basis, legal or equitable, for restraining the landlord from enforcing his judgment. In other words, a tenant seeking relief from forfeiture of his lease must be prepared to square his account with his landlord.

*Id.* at 148.

■■ In general, tender requires an unconditional offer of payment in full. *Davidge v. Simmons,* 49 App.D.C. 398, 399, 266 F.

1018, 1019 (1920) (citations omitted). Moreover, a tender must be in a form acceptable to the creditor. *See Modern Eng'g & Serv. Corp. v. McCrea,* 46 A.2d 767, 769 (D.C.1946) (a check is not good tender of payment and need not be accepted by a creditor entitled to cash) (citations omitted); *see also* 86 C.J.S. *Tender* § 26 (1954) (sufficient tender requires an unconditional offer of payment in a form acceptable to the creditor, *e.g.,* cash, a certified check, or a money order, in an amount not less than that which is due on a specific debt).

■ This court has previously addressed the issue of tender in the context of an action for possession. In *Pernell v. Southall Realty,* 294 A.2d 490, 498 n. 31 (D.C.1972), *rev'd on other grounds,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974), the tenant contended, *inter alia,* that he was entitled to a stay of writ of restitution pursuant to the *Trans–Lux* doctrine "because of some undertaking" by DHS's predecessor agency to pay his overdue rent.[5] In concluding that the trial judge did not err in refusing to stay the writ of restitution, we held that "[t]here was nothing in the record to show the terms of the undertaking ... except a promise to make such payment in the future. Under the circumstances, we cannot hold that the Trans–Lux rule was satisfied."[6] *Id.* Thus, anything short of an unconditional offer to pay all the rent owed is insufficient for purposes of redeeming tenancy. *See id.; Trans–Lux, supra,* note 1, 54 A.2d at 148; *see also National Capitol Hous. Auth. v.*

---

produce a different result at a new trial") (citations omitted).

4. We reject the tenant's claim that both Judge Kollar–Kotelly and Judge Long erred in finding that she was not entitled to relief under the doctrine of equitable estoppel. Judge Kollar–Kotelly found that the tenant had never been informed by any representative of the landlord that the confirmation letter was sufficient tender or that the tenant had otherwise satisfied the *Trans–Lux* amount. Judge Kollar–Kotelly concluded that the tenant "seem[ed] to have had, at least in her own mind, an understanding that the two things [*i.e.,* the money orders and the confirmation letter] would be accepted, although evidently there was nothing said in any way to confirm that and she evidently didn't clarify it." Similarly, Judge Long found that the landlord did not "try to fool the tenant or specifically lull

her into thinking that she had paid all that she owed." Based on our own review of the record, we are satisfied that sufficient evidence supports both judges' finding that the tenant is not entitled to relief based on equitable estoppel grounds. *See Nolan v. Nolan,* 568 A.2d 479, 484 (D.C. 1990); *United Sec. Corp. v. Verene,* 193 A.2d 429, 431 (D.C.1963).

5. It is not clear from the court's brief discussion what the facts were regarding the "undertaking."

6. In *Pernell,* we held, *inter alia,* that a tenant is not entitled to a jury trial in an action for possession. That holding was reversed by the Supreme Court. *Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974). Our holding with respect to the undertaking, however, was not disturbed by the Supreme Court.

*Douglas,* 333 A.2d 55, 56–57 (D.C.1975) (trial court abused discretion in staying judgment of execution for two years, during which time tenant was to pay accrued past rent in monthly installments).

The tenant, however, maintains that *Johnson v. Edgewood Management Corp.,* 512 A.2d 287 (D.C.1986), modified our holding in *Pernell* with respect to redemption, and she relies on that case for the proposition that the tender of an Emergency Assistance Services confirmation letter is sufficient for purposes of redeeming tenancy.[7] That reliance is misplaced. The only issue in *Johnson* was whether the trial judge erred in finding lawful an eviction based on the tenant's failure to pay *post*-judgment costs. The *Johnson* court did not specifically consider whether a commitment letter was sufficient tender for purposes of redemption. Any reference to a commitment letter serving as tender, therefore, is *dictum* and cannot affect our holding in *Pernell, supra,* 294 A.2d at 498 n. 31. In any event, any modification of the holding in *Pernell,* such as that ascribed by the tenant to *Johnson,* can be accomplished only by this court sitting *en banc. See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

■ Here, both Judge Kollar–Kotelly and Judge Long found that the confirmation letter was merely a promise to pay in the future. Indeed, the letter does not indicate when payment would be made or what obligation would fall upon the tenant if the payment was not made. The conclusion that the landlord could not count on immediate receipt of funds as the result of receipt of the confirmation letter is supported by the landlord's experience with the lost Emergency Assistance Services check referred to above. Judge Long observed that the earlier confirmation letter had been issued for a $1,116.90 payment, but for some unexplained reason the landlord never received the check. The $1,116.90 payment was eventually received by the landlord over two months after the issuance of the confirmation letter. That experience can hardly be considered to be the immediate payment-in-full that *Trans–Lux* and *Pernell* require.[8] Moreover, in this case the landlord informed the tenant that the confirmation letter was not acceptable tender. Thus, the confirmation letter, like the undertaking in *Pernell,* is no better than "a promise to make such payment in the future," and under these circumstances "we cannot hold that the Trans–Lux rule was satisfied." *Pernell, supra,* 294 A.2d at 498 n. 31. We conclude, therefore, that Judge Kollar–Kotelly's factual findings are not plainly wrong or without evidence to support them and that the trial judge committed no error of law. Further, we hold that Judge Long did not abuse discretion in denying appellant's motion for reconsideration.

In sum, we hold that in order to be entitled to redemption under *Trans–Lux,* the tenant must tender an unconditional payment of all accrued rent, along with any interest and court costs, to the landlord. Such tender could be in the form of cash, a certified check, money order, or funds on deposit in the court registry. *See generally Dameron, supra* note 3, 431 A.2d at 584 (one purpose of protective orders is to protect "tenants successful in their litigation from forfeiting their lease at the conclusion of the [action for possession] because they cannot make up an

7. In *Johnson,* the trial court initially granted a judgment of possession and advised the tenant that he could redeem his tenancy by paying the arrearage and court costs accumulated as of October 31, anytime prior to an eviction. *Johnson, supra,* 512 A.2d at 288. The tenant then applied to the DHS for Emergency Assistance Services. *Id.* Because the tenant did not redeem his tenancy before the end of the month, the landlord obtained a writ of restitution of the judgment for possession. *Id.* On November 22, the tenant tendered to the landlord cash for November rent and "a commitment letter from DHS promising to make payment" for the arrearage. *Id.* On December 10, the tenant was evicted. *Id.* The trial court found that the eviction was lawful, despite the fact that the tenant had paid the arrearage, November rent and court costs, because the tenant had not fully paid the post-judgment cost incurred by the landlord in obtaining the writ of restitution. *Id.* at 288–89. We reversed, concluding that an eviction for failure to cure a rent default could not be based on the tenant's failure to pay a post-judgment cost incurred by the landlord. *Id.* at 290.

8. A check in the amount specified in the confirmation letter, $511.98, was received after the eviction and subsequently returned by the landlord to DHS.

unpaid deficiency").[9] Since the confirmation letter delivered by the tenant was not such an unconditional offer of payment, we hold that Judge Kollar–Kotelly and Judge Long did not err in ruling that the landlord was under no obligation to accept the confirmation letter as sufficient tender for purposes of redemption under *Trans–Lux.*

*Affirmed.*

SULLIVAN, Associate Judge, concurring:

I am constrained to join the majority's decision because this court's ruling in *Pernell*

*v. Southall Realty, supra* at 498 n. 31, as recognized by the majority, was not overruled by our subsequent decision in *Johnson v. Edgewood Management Corp., supra.* Only the *en banc* court can overrule a prior decision of this court. *See M.A.P. v. Ryan, supra* at 312.

---

9. A landlord can of course agree, but cannot be required, to accept payment of a more conditional nature.